**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| DROPBOX, INC.,<br><br>      *Plaintiff/Counter-Defendant,*<br><br>  v.<br><br>MOTION OFFENSE, LLC,<br><br>      *Defendant/Counter-Plaintiff.* | Civil Action No.:  6:20-cv-00251-ADA<br><br>Oral Hearing Requested<br>– Local Rule CV-7(h) |

**<u>PLAINTIFF DROPBOX, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................ 1

II. Background ........................................................................................................................ 1

    A. Applications to Which the Asserted Patents Claim Priority ........................................ 2

    B. The October 3, 2017 Continuation-in-Part Applications Resulting in the Asserted Patents ........................................................................................................................ 6

    C. Challenged Limitations ................................................................................................ 7

III. Legal Standards .................................................................................................................. 8

IV. Argument ......................................................................................................................... 10

    A. The "Send" and "Receive" Limitations ..................................................................... 10

    B. "Generation" Limitations ........................................................................................... 13

V. Conclusion ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anascape, Ltd. v. Nintendo of Am. Inc.*,
   601 F.3d 1333 (Fed. Cir. 2010) .................................................................................. *passim*

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc) ........................................................................ 9

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
   181 F.3d 1291 (Fed. Cir. 1999) ........................................................................................ 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................................... 8

*In re Glob. IP Holdings LLC*,
   927 F.3d 1373 (Fed. Cir. 2019) ........................................................................................ 9

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997) ............................................................................... 1, 9, 10

*Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*,
   741 F.3d 1359 (Fed. Cir. 2014) ........................................................................................ 8

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) ...................................................................... 9, 10, 13, 15

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   655 F.3d 1364 (Fed. Cir. 2011) ........................................................................................ 9

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ........................................................................................ 9

**STATUTES, RULES, AND REGULATIONS**

37 C.F.R. § 1.53(b)(2) ............................................................................................................ 10

35 U.S.C. § 112 ........................................................................................................................ 9

Fed. R. Civ. P. 56(a) ................................................................................................................ 8

MPEP § 201.08 ...................................................................................................................... 10

**I.      INTRODUCTION**

Dropbox respectfully moves for summary judgment that all asserted claims are entitled to a priority date of no earlier than October 3, 2017. That is the date on which the inventor first filed a continuation-in-part patent application that added an external node with messaging functionality to the specification—that is, a node that is separate from the user computers and that generates messages such as emails. Prior to that time, the patent applications were solely directed to user-computer functionality for generating messages. Thus, prior to October 3, 2017, there was no written description support for the asserted claims. Under well-settled authority, "[t]o obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Because the external messaging node limitations of the asserted claims find no support in the pre-2017 patent applications, Dropbox is entitled to summary judgment that those claims are not eligible for a priority date prior to October 3, 2017.

The asserted claims' priority date is an issue for the Court, not the jury. In this case, the Court should decide this issue before fact discovery begins because doing so will significantly streamline the remaining issues in this case, including the scope of party discovery on non-infringement, invalidity, and damages, and whether Dropbox needs to take discovery from third parties for its invalidity defenses.

**II.     BACKGROUND**

Motion Offense, LLC ("Motion Offense") asserts five patents: U.S. Patent Nos. 10,013,158 (Dkt. 43 at Ex. A, the "'158 patent"), 10,021,052 (Dkt. 43 at Ex. B, the "'052 patent"), 10,303,353

1

(Dkt. 43 at Ex. C, the "'353 patent"), 10,587,548 (Dkt. 43 at Ex. E, the "'548 patent"), and 10,613,737 (Dkt. 43 at Ex. D, the "'737 patent"). All five are related and have the same inventor, Robert Paul Morris.

### A. Applications to Which the Asserted Patents Claim Priority

All of the asserted patents claim priority to two applications: No. 13/624,906, filed on September 22, 2012, and No. 13/626,635, filed on September 25, 2012 (collectively, the "Original Applications").[1] The Original Applications went through minimal prosecution before they were abandoned. *See* Declaration of Gregory Lantier ("Lantier Decl."), Ex. 1 ('906 prosecution history excerpt); Lantier Decl. Ex. 2 ('635 prosecution history excerpt).

The asserted '158 and '052 patents were both filed on October 3, 2017 and are ***continuations-in-part*** of a descendant of the Original Applications.[2] '158 patent at 1:8-24; '052 patent at 1:8-25. The remaining asserted patents were filed as direct or indirect continuations of the '158 or the '052 patents.

The Original Applications are directed to requesting and/or sharing content between two user computers across a network (such as the Internet) via email such that the content is shared without being attached to the email. *See, e.g.*, Lantier Decl. Ex. 3 ('906 application) ¶ [0115] (describing communications sent to "Dad"); Lantier Decl. Ex. 4 ('635 application) ¶ [0086] (describing communications sent to "William"); *see also* Lantier Decl. Ex. 3 ('906 application)

---

[1] The file histories for the asserted patents show that the oldest application to which the asserted patents claim priority was filed on September 22, 2012. Motion Offense alleges, based on a draft version of a patent application, that all five asserted patents are entitled to a priority date of July 25, 2012. Regardless of whether Motion Offense claims a priority date of July 25, 2012 or September 22, 2012, there is no written description support for the asserted claims prior to October 3, 2017.

[2] Specifically, they are continuations-in-part of Application No. 14/274,623, filed on May 9, 2014, which does not substantially differ from the Original Applications and does not change the analysis in this motion. *See* Declaration of Phillip Gibbons ("Gibbons Decl.") ¶ 20 & n.1.

2

¶ [0003]; Lantier Decl. Ex. 4 ('635 application) ¶¶ [0005], [0142].  In other words, instead of attaching a PDF file to an email, for example, the Original Applications describe that the user computer creates an email that includes a link to a location where the PDF file can be found.

As shown in the figures below, the Original Applications describe messages that are composed at and sent from a user computer to another user computer.



FIG. 6D

FIG. 6E

Lantier Decl. Ex. 4 ('635 application) at Figs. 6D (excerpt showing an edit window at a user computer for generating an email message to share content), 6E (showing an edit window at a user computer for generating an email message to request content), ¶ [0122] (describing an "edit window" presented to a user "in response to a user input to create a new email").  Also, as shown in Figure 7 below, the Original Applications further describe generating an email message at a user computer and sending it from that user computer to another user computer.



FIG. 7

Lantier Decl. Ex. 4 ('635 application) at Fig. 7, ¶ [0029] ("FIG. 7 is a message flow diagram illustrating an exemplary data and execution flow for sharing a data object in a data store via a communication according to an aspect of the subject matter described herein."); *see also* Lantier Decl. Ex. 3 ('906 application) at Fig. 7 (showing a similar figure). The Original Applications describe that the messages exchanged between the first and second user computers depicted in Figure 7 are "on behalf of communicants represented by the respective nodes," and that "[t]he term 'communicant' as used herein refers to a user included in a communication as a sender and/or receiver of the information." Lantier Decl. Ex. 4 ('635 application) ¶¶ [0065], [0074]; *see also* Lantier Decl. Ex. 3 ('906 application) ¶¶ [0087], [0103].

Importantly, in the Original Applications, all of the steps of the disclosed invention are

performed *by the user computers*, and there are no messaging steps performed by any external messaging node. Where intervening nodes between the user computers are described, they are merely "path" nodes that "relay" the messages sent between the two user computers, as shown in Figure 5 below.



FIG. 5

Lantier Decl. Ex. 3 ('906 application) at Fig. 5 ("path node 508"); *see also* Lantier Decl. Ex. 4 ('635 application) at Fig. 5 (showing a similar figure); Lantier Decl. Ex. 3 ('906 application) ¶ [0119] ("One or more path nodes may relay data sent in the communication between execution environment 401 of first node 502 and execution environment 401 of second node 504."). Those intervening external nodes *do not manipulate the message content sent to or received from the*

*user computers and they do not generate messages*. *See* Lantier Decl. Ex. 3 ('906 application) ¶ [0090]; *see also id.* ¶¶ [0114], [0124], [0162]; Gibbons Decl. ¶¶ 24-25, 42-44.[3]

Consistent with that written description, the claims in the Original Applications recite sending a communication *generated at one user computer* to another user computer over a network such as the Internet. *See* Lantier Decl. Ex. 3 ('906 application) at claim 1 ("sending, . . . via a network in a communication to . . . a second user, a first message"), claim 11 ("receiving, via a network by a second communications agent representing a second user . . . , a first message from a first communications agent representing a first user"), claim 22 (same); Lantier Decl. Ex. 4 ('635 application) at claim 1, claim 11, claim 19, claim 20; *see also* Lantier Decl. Ex. 3 ('906 application) ¶ [0113] ("Communications protocol component 407 [of the first user computer] may further package and/or otherwise transform the data to send via network stack 405 for delivery network 506 to execution environment 401 of second node 504 [the second user computer]."). The *only* external nodes and servers discussed in the Original Applications are used to store user data, locate stored user data, or are "mail relay" path nodes that simply relay information along a network path. Gibbons Decl. ¶¶ 24-25, 27.

### B. The October 3, 2017 Continuation-in-Part Applications Resulting in the Asserted Patents

On October 3, 2017, the applications for the '158 and '052 patents were filed as continuations-in-part. While making no significant changes to the written description, the claims of these continuation-in-part patents and the other asserted patents recite a system that is

---

[3] Motion Offense's November 20, 2020 Letter further confirms that the Original Applications are limited to a file sharing/request email message generated at one user computer and sent from that user computer to another user computer over a network without any input from an intermediary external processor to generate the email message. *See* Lantier Decl. Ex. 5 (Motion Offense Nov. 20, 2020 Letter) at 4 (citations to '158 and '052 patents).

fundamentally different from that described in the Original Applications.[4]  Rather than describing a system in which user computers generate email messages with links to shared content, the October 3, 2017 continuation-in-part applications claim and describe an ***external messaging node*** that sits between two user computers and generates emails that provide links to shared content. For example, claim 3 of the '158 patent describes that at least one processor (i.e., at an external messaging node) receives individual pieces of information from a user computer over a network piecemeal in a sequential process.  The individual pieces of information include an "indication of at least one folder," an "indicia associated with at least one email address," and "an indication to share the at least one folder."  Once the at least one processor at this external messaging node has obtained all the necessary pieces of information, it uses those individual pieces of information to generate an email message that contains a link to content such that the content is shared without being attached to the email.  The at least one processor then sends the email it has generated to the second user computer.  *See, e.g.*, '158 patent at claim 3; *see also, e.g.*, '158 patent at 2:15-4:46.

### C. Challenged Limitations

Dropbox challenges two groups of claim limitations in this Motion, neither of which was present in Motion Offense's pre-October 3, 2017 patent applications: (1) the "send" and "receive" limitations, and (2) the "generation" limitations.

The "send" and "receive" limitations are present in all of the asserted independent claims.[5] These limitations require an external messaging node that receives individual pieces of information

---

[4] The asserted patents do not contain any drawings that were not included in the Original Applications.  In addition to the fundamentally different claims, the only substantive difference between the specifications of the Original Applications and the asserted patents is the Summary section, which largely repeats the language of the newly added claims.

[5] A full list of the "send" and "receive" limitations for the asserted independent claims is attached as Appendix A to Gibbons Decl.

7

from a first user computer and actively communicates back and forth with that first user computer in order to request and receive that information. That functionality is completely absent from the Original Applications, which describe only passive mail relay nodes that simply transmit data between user computers.

The "generation" limitations are present in asserted independent claims from four of the five asserted patents.[6] The "generation" limitations require the generation of an email message by the external messaging node, which is then sent by the external messaging node to a user computer. That functionality is likewise wholly absent from the Original Applications, which never describe a messaging node external to the user computer that generates email messages. Instead, they describe *user computers* that generate email messages, and intervening relay nodes that merely transmit those email messages from one user computer to another user computer.

### III.     LEGAL STANDARDS

Summary judgment shall be granted where it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Determination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed." *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014).

Claims are entitled to a previous application's filing date only if there is adequate written description under 35 U.S.C. § 112. *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1371 (Fed. Cir. 2011); *Anascape*, 601 F.3d at 1335 ("To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written

---

[6] A full list of the "generation" limitations of the asserted independent claims is attached as Appendix B to Gibbons Decl.

description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" (quoting *Lockwood*, 107 F.3d at 1572)); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) ("It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112."). Where the original application does not include a written description that supports claim limitations added in a subsequent application, the claims are entitled to the priority date of the first application that provides written description support for those claims. *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999) ("Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application. Thus, the decision on the proper priority date—the parent application date or the CIP application date—for subject matter claimed in a CIP application depends on when that subject matter first appeared in the patent disclosures." (citations omitted)).

"To satisfy the written description requirement, the disclosure of the earlier filed application must describe the later claimed invention 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1331 (Fed. Cir. 2008) (quoting *Lockwood*, 107 F.3d at 1572); *see also In re Glob. IP Holdings LLC*, 927 F.3d 1373, 1376-77 (Fed. Cir. 2019) (written description requirement of 35 U.S.C. § 112 "is met when the specification clearly allows persons of ordinary skill to recognize that the inventor 'invented what is claimed'" (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc))).

Lastly, continuation-in-part applications generally add new subject matter. *See*

*PowerOasis*, 522 F.3d at 1304 n.3 ("Generally, a CIP adds new matter on which at least one claim relies for support."); MPEP § 201.08 ("A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and ***adding matter not disclosed in the earlier nonprovisional application***." (emphasis added)); *see also* 37 C.F.R. § 1.53(b)(2) (indicating a continuation-in-part "may disclose and claim subject matter not disclosed in the prior application").  A continuation-in-part application may therefore contain claims whose priority date is the filing date of the continuation-in-part application.  That is the case here.

## IV.   ARGUMENT

The asserted claims all include limitations reciting external messaging node functionality that was first added to the patent applications on October 3, 2017.  The Original Applications do not describe the creation or modification of messages at a node other than the user computers.  The asserted claims, therefore, are not entitled to the filing date of the Original Applications because they are not "supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'"  *Anascape*, 601 F.3d at 1335 (quoting *Lockwood*, 107 F.3d at 1572).

### A.   The "Send" and "Receive" Limitations

There is no written description support prior to October 3, 2017 for the "send" and "receive" limitations, which describe an external messaging node that receives individual pieces of information from a first user computer in separate transactions.

For example, claims 1 and 3 of the '158 patent, respectively, describe the first user computer sending multiple messages with individual pieces of information to another, *external* messaging node, and the external messaging node receiving those individual pieces of information

from a first user computer.[7] Specifically, the user computer first identifies the folder to be shared, then separately identifies the email address to which the folder is to be sent, and then sends the external messaging node a notification that the folder should be shared[8]:

| Claim 1 of the '158 Patent | Claim 3 of the '158 Patent |
|---|---|
| *send*, from the first node via at least one network, *the information associated with the at least one folder*; <br> . . . <br> *send*, from the first node via the at least one network, *the object associated with the at least one email address*; <br> . . . <br> *send*, from the first node via the at least one network, *the indication of the selection of the third user interface element*; <br><br> '158 patent at claim 1 (emphasis added). | *receive, from the first node* via the at least one network, *an indication of at least one folder* via the first user interface element, utilizing the at least one first interface; <br> . . . <br> *receive, from the first node* via the at least one network, *indicia associated with at least one email address* via the second user interface element, utilizing the at least one second interface; <br><br> *receive, from the first node* via the at least one network, *an indication to share the at least one folder*; <br><br> '158 patent at claim 3 (emphasis added). |

The external messaging node actively communicates back and forth with the first user computer in order to obtain the individual pieces of information. *Id.* at claim 3 ("one or more processors . . . wherein the one or more processors execute the instructions to: *cause, at a first node*, display of at least one first interface . . . *receive, from the first node* via the at least one network, an indication of at least one folder via the first user interface element, utilizing the at least one first interface"; "*cause, at the first node*, display of at least one second interface . . . *receive,*

---

[7] As explained below with respect to the "generation" limitations, the external messaging node then uses those individual pieces of information to generate an email message which it sends to the second user computer.

[8] While claim 1, unlike claim 3, does not expressly discuss the use of an intermediary external messaging node, Motion Offense reads claim 1 and all other claims that do not expressly discuss an intermediary external messaging node on Dropbox's server functionality in its infringement contentions. Moreover, a person of ordinary skill in the art would understand claim 1 to require an external messaging node. Gibbons Decl. ¶¶ 39-40.

*from the first node* via the at least one network, indicia associated with at least one email address via the second user interface element, utilizing the at least one second interface" (emphasis added)).[9]

The other "send" and "receive" limitations of the other asserted claims are similar to the send and receive limitations in claims 1 and 3 of the '158 patent. *See* Gibbons Decl. ¶ 41; *see also* Gibbons Decl. Appendix A (listing all "send" and "receive" limitations in the asserted claims).

The Original Applications do not provide written description support for an external messaging node that gathers pieces of information in order to generate an email message. Instead, the Original Applications describe the first *user computer* as being responsible for gathering information for an email and generating the email that it then sends to the other user computer. For example, the Original Applications describe "edit windows" which allow a *user computer* to generate emails to request content and to share content. Lantier Decl. Ex. 4 ('635 application) at Figs. 6D, 6E, ¶ [0122].

Where the Original Applications describe nodes external to the user computers, those nodes are solely "path nodes" that merely "relay" messages between the user computers without modification, or that are used to store or locate stored user data. *See, e.g.*, *id.* at Fig. 7, ¶ [0085] ("Exemplary path nodes include mail relay nodes, phone switch nodes, and proxy nodes such as instant messaging proxies for communicating through firewalls."); Lantier Decl. Ex. 3 ('906 application) at Fig. 5, ¶ [0119] ("One or more path nodes may relay data sent in the communication

---

[9] Motion Offense reads at least one of the "one or more processors" to be an external messaging node, as its infringement contentions accuse Dropbox's server functionality. This reading is consistent with how a person of ordinary skill in the art would understand the claims. Specifically, a person of ordinary skill in the art would understand at least one of the "one or more processors" to be contained in a messaging node which is separate from the first user computer and the second user computer. Gibbons Decl. ¶¶ 30-31.

between execution environment 401 of first node 502 and execution environment 401 of second node 504."); *see also* Gibbons Decl. ¶ 24-25, 42-44.  In other words, the Original Applications only describe an intermediary mail relay node between two user computers that can act as a go-between, and do not describe an intermediary external messaging node that can separately communicate with the first user computer for the purpose of generating a message, generate the message, and then send the generated message to the second user computer.  A person of ordinary skill in the art would therefore not have understood the Original Applications to disclose an external messaging node as was first claimed in the October 3, 2017 continuation-in-part applications.  Gibbons Decl. ¶¶ 42-47.

Accordingly, the "send" and "receive" limitations are not entitled to a priority date prior to October 3, 2017.  *See Anascape*, 601 F.3d at 1335 ("To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'"); *PowerOasis*, 522 F.3d at 1306 ("It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112.").

### B.  "Generation" Limitations

As with the "send" and "receive" limitations, there is also no written description support prior to October 3, 2017 for the "generation" limitations.  These limitations recite an external messaging node that ***generates an email*** to send to the second user computer.

For example, claim 3 of the '158 patent recites "one or more processors" that "generate at least one email message identifying the at least one folder and including a reference to the at least one folder, without including at least one file in the at least one folder as an attachment of the at

13

least one email message." '158 patent at claim 3. Claim 3 further describes the external messaging node sending that email message to the second user computer. *Id.*

Thus, claim 3 describes an external messaging node that uses the communications it received piecemeal from a user computer to generate an email that it then sends to a second user computer. *See* '158 patent at claim 3 ("based on the receipt of the indication of the at least one folder, the indicia associated with the at least one email address, and the indication to share the at least one folder via the at least one network: **generate** at least one email message"; "send, to a second node . . . the at least one email message" (emphasis added)). The external messaging node is therefore more than a passive path or mail relay node; it is **combining** separate pieces of information it received in separate transactions in order to **generate** an email message. *See* Gibbons Decl. ¶ 50.

The other "generation" limitations of the other asserted claims are similar to the "generation" limitations in claim 3 of the '158 patent. *See* Gibbons Decl. ¶ 51; *see also* Gibbons Decl. Appendix B (listing all "generation" limitations in the asserted claims).

The Original Applications do not provide written description support for a messaging node distinct from the user computers to "generate" an email as claimed in the asserted patents. As described above in Section IV.A, where the Original Applications describe a node distinct from the user computers, the Original Applications describe only a "path node" that "relay[s]" messages between user computers, i.e., a mail relay node. Because the path node only "relay[s]" messages, the Original Applications do not describe "generation" of an email or message by an external messaging node.[10] *See, e.g.*, Lantier Decl. Ex. 3 ('906 application) ¶ [0114] ("Exemplary path

---

[10] As mentioned above, the Original Applications also disclose nodes or servers that store user data or to locate stored user data. *See* Lantier Decl. Ex. 3 ('906 application) ¶¶ [0124], [0162]. However, these nodes or servers would not be involved in communications between users.

nodes include mail relay nodes, phone switch nodes, and proxy nodes such as instant messaging proxies for communicating through firewalls."), ¶ [0119] ("Path node 508 may relay data sent in the communication between first node 502 and execution environment 401 of second node 504. Path node 508 may determine a next node and/or a network interface in a network path communicatively coupling first node 502 and execution environment 401 of second node 504 for exchanging data in a communication . . . ."). The Original Applications *only* disclose a *user computer* that generates an email that is sent to another user computer. In particular, the figures and descriptions of the figures in the Original Applications all show that the user computer transforms the information it receives from a user into an email message to send to another user computer, i.e., one user computer generates an email message and sends it to another user computer. *See, e.g.*, Lantier Decl. Ex. 4 ('635 application) at Figs. 6D, 6E, 7, ¶ [0122] (describing an "edit window" presented to a user "in response to a user input to create a new email"); *see also* Lantier Decl. Ex. 4 ('635 application) ¶ [0094] (describing Figure 7 as "illustrat[ing] a first message 702" sent by the second user computer [second node 504] and received by the first user computer [first node 502]); Lantier Decl. Ex. 3 ('906 application) ¶ [0113] ("Communications protocol component 407 [of the first user computer] may further package and/or otherwise transform the data to send via network stack 405 for delivery via network 506 to execution environment 401 of second node 504 [the second user computer]."). A person of ordinary skill in the art would therefore not have understood the Original Applications to disclose an external messaging node that generates an email or message as is claimed. Gibbons Decl. ¶¶ 53-55.

Accordingly, the "generation" limitations are not entitled to a priority date prior to October 3, 2017. *See Anascape*, 601 F.3d at 1335; *PowerOasis*, 522 F.3d at 1306.

## V.   CONCLUSION

Because all of the asserted claims include new matter in their limitations that was first

added on October 3, 2017, the Court should determine that the priority date for all of the asserted claims is no earlier than October 3, 2017.

Dated: December 14, 2020

   */s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Tel: (512) 495-6464
Email: steve.ravel@kellyhart.com
Email: sven.stricker@kellyhart.com

Gregory H. Lantier (pro hac vice)
WILMER CUTLER PICKERING HALE
& DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6327
Email: gregory.lantier@wilmerhale.com

Liv Herriot (pro hac vice)
WILMER CUTLER PICKERING HALE
& DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6138
Email: liv.herriot@wilmerhale.com

*Attorneys for Dropbox, Inc.*

**CERTIFICATE OF SERVICE**

     The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system in accordance with Local Rule CV-5 on December 14, 2020.

               */s/ J. Stephen Ravel*