IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DROPBOX, INC.,<br>    Plaintiff-Counter-Defendant,<br><br>v.<br><br>MOTION OFFENSE, LLC,<br>    Defendant-Counter-Plaintiff. | 6:20-cv-251-ADA |

**ORDER DENYING PLAINTIFF DROPBOX, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [ECF No. 61]**

Came on for consideration this date is Plaintiff Dropbox, Inc.'s Motion for Partial Summary Judgment, filed December 14, 2020. ECF No. 61 (the "Motion"). Dropbox requests judgment that the asserted patent claims are not sufficiently supported in earlier patent applications such that the former can benefit from the latter's filing date. Defendant Motion Offense, LLC ("MO") responded on February 8, 2021, ECF No. 72, to which Plaintiff Dropbox, Inc. ("Dropbox") replied on February 26, 2021, ECF No. 75. After being granted leave, MO filed a sur-reply on March 16, 2021. ECF No. 78. Oral arguments were held March 24, 2021. *See* ECF No. 81. After careful consideration of the Motion, the Parties' briefs and oral arguments, and the applicable law, the Court **DENIES** Dropbox's Motion for Partial Summary Judgment.

**I. BACKGROUND**

MO accuses Dropbox of infringing five patents: U.S. Patent Nos. 10,013,158 (the "'158 patent"), 10,021,052 (the "'052 patent"), 10,303,353 (the "'353 patent"), 10,587,548 (the "'548 patent"), and 10,613,737 (the "'737 patent") (collectively, the "Asserted Patents"). All five are related and have the same independent inventor, Robert Paul Morris. Each Asserted Patent claims the benefit of U.S. Patent Application Nos. 13/624,906, ECF No. 61-4 (the "'906 application"), filed September 22, 2012, and 13/626,635, ECF No. 61-5 (the "'635 application"), filed September

25, 2012 (collectively, the "Original Applications"). The '158 and '052 patents were filed on October 3, 2017 and are continuations-in-part of a descendant of the Original Applications. '158 patent at 1:8-24; '052 patent at 1:8-25. The remaining Asserted Patents were filed as direct or indirect continuations of the '158 or the '052 patents.

The Asserted Patents and Original Applications relate to methods and systems for sharing files and folders via a network. ECF No. 61-4 ¶¶ 3, 6, 11, 46, 60, 103, 111–114, 124, 127. The Original Applications disclose a first node messaging a second node over a network, and instead of the method including the files and folders as attachments, it merely includes links to those files and folder. *Id.* Figure 5 of the '906 application depicts such an embodiment, with a first node 502, a second node 504, a network 506, and a path node 507.



FIG. 5

*Id.* at Fig. 5. The Original Applications also describe how each of the first node 502 and second node 504 "may be included in and/or otherwise adapted for providing an instance, adaptation, and/or analog of execution environment 401 in FIG. 4." *Id.* ¶ 103.



FIG. 4

*Id.* at Fig. 4. Moreover, "The components illustrated in FIG. 4 may be included in or otherwise combined with the components of FIG. 1 to create a variety of arrangements of components according to the subject matter described herein." *Id.* ¶ 101.



FIG. 1

*Id.* at Fig. 1.

The specification for the Original Applications continue, detailing how "FIG. 6A-G illustrates various communications agent windows 602 presentable in a presentation space of a display device, such as output device 130 in FIG. 1." *Id.* ¶ 111. For example, Figure 6D illustrates "a window, request window UI element 602d, presenting an exemplary representation of a message received from execution environment 401 of first node 502 in a communication with second node 504." *Id.* ¶ 166.



*Id.* at Fig. 6D.

Figure 7 is a "message flow diagram illustrating an exemplary data and execution flow for processing a data object identification request in a communication," operating on structures discussed above. *Id.* ¶ 27.



FIG. 7

*Id.* at Fig. 7. It shows a first message 702, "including a data object identification request, sent via network 506 by execution environment 401 of first node 502 to execution environment 401 of second node 504." *Id.* ¶ 134.

Dropbox's Motion argues that that MO's asserted claims are not entitled to the benefit of the filing date of the Original Applications because the Original Applications do not provide written description support for the asserted claims. That Motion is ripe for judgment.

## II. LEGAL STANDARD

### A.   Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). A material fact will have a reasonable likelihood to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the fact that the court believes that the non-moving party will be unsuccessful at trial is an insufficient reason to grant summary judgment in favor of the moving party. *See Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). Yet, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

B. **Written Description**

It is well-established that:

> To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent "in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought."

*Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Section 112 of Title 35 of the United States Code lays the foundation for the written-description requirement:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

35 U.S.C. § 112 ¶ 1.[1] "The test for the sufficiency of the written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Vasudevan Software v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015) (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Vasudevan*, 782 F.3d at 682 (citing *Ariad*, 598 F.3d at 1351). Whether the written description adequately supports a patent claim is a question of fact. *Id.* (citing *Ariad*, 598 F.3d at 1355). "A party must prove invalidity for lack of written description by clear and convincing evidence." *Id.*

---

[1] Congress amended the Patent Act in 2011 when it passed the Leahy-Smith America Invents Act (AIA). *See* Pub. L. No. 112-29, 125 Stat. 284, 296 (2011). Because the AIA version of § 112 does not differ from the pre-AIA versions in any respect relevant to the issues here, for simplicity this opinion will cite only to the pre-AIA Act.

## III. ANALYSIS

MO has presented sufficient expert testimony to overcome summary judgment. Dropbox presented expert testimony from Dr. Phillip Gibbons in support of its Motion. ECF No. 61-9. MO presented expert testimony from Dr. Michael Smith in support of its opposition. ECF No. 72-3. Dr. Smith opined on how the Original Applications support the asserted claims; Dropbox failed to distinguish relevant passages that Dr. Smith relied on, through attorney argument or expert opinion. Indeed, Dropbox did not present expert testimony to rebut Dr. Smith opinion. The Court is satisfied that MO has thereby presented a genuine issue of material fact.

### A.   The Written-Description Challenge

Dropbox posits that the Original Applications do not support an "external messaging node" performing "send," "generate," and "receive" limitations recited in claim 3 of the '158 patent. ECF No. 61 at 10. Claim 3 recites:

> An apparatus, comprising:
>
> at least one non-transitory memory storing instructions; and
>
> one or more processors in communication with the at least one non-transitory memory, wherein the one or more processors execute the instructions to:
>
>> cause, at a first node, display of at least one first interface with a first user interface element, utilizing first hypertext markup language-equipped code that is sent via at least one network;
>>
>> receive, from the first node via the at least one network, an indication of at least one folder via the first user interface element, utilizing the at least one first interface;
>>
>> cause, at the first node, display of at least one second interface with a second user interface element, utilizing second hypertext markup language-equipped code that is sent via the at least one network;
>>
>> receive, from the first node via the at least one network, indicia associated with at least one email address via the

> second user interface element, utilizing the at least one second interface;
>
> receive, from the first node via the at least one network, an indication to share the at least one folder;
>
> based on the receipt of the indication of the at least one folder, the indicia associated with the at least one email address, and the indication to share the at least one folder via the at least one network; generate at least one email message identifying the at least one folder and including a reference to the at least one folder, without including at least one file in the at least one folder as an attachment of the at least one email message;
>
> send, to a second node via the at least one network, the at least one email message, without including the at least one file in the at least one folder as an attachment of the at least one email message;
>
> based on the receipt of the indication of the at least one folder, the indicia associated with the at least one email address, and the indication to share the at least one folder via the at least one network; cause, utilizing particular code configured to be stored on a storage at the second node and further configured to cooperate with a file explorer interface, creation of a representation of the at least one folder in a location among one or more folders on the file explorer interface, where the storage at the second node does not store the at least one file when the creation of the representation of the at least one folder is caused;
>
> cause, at the second node, display of the representation of the at least one folder in the location among the one or more folders on the file explorer interface;
>
> detect, at the second node, an indication to open the at least one file in the at least one folder; and
>
> in response to detection of the indication to open the at least one file in the at least one folder, cause retrieval of the at least one file via the at least one network for permitting display of the at least one file at the second node.

'158 patent, claim 3. In Dropbox's opinion, claim 3 implicitly requires what Dropbox refers to as an "external messaging node." *See* ECF No. 61 at 6–7. Claim 3 also allegedly requires that the

9

external messaging node perform the "send," "generate," and "receive" limitations. Dropbox contends that, though they describe an external node, the Original Applications do not describe such nodes performing these three claimed steps. *See id.* at 10. Thus claim 3 cannot, in Dropbox's opinion, benefit from the filing date of the Original Applications.

Claim 3 of the '158 patent is directed to an apparatus comprising "one or more processors" for executing instructions stored in the apparatus's "non-transitory memory." Dropbox posits that the "one or more processors" constitute an "external messaging node" separate from claimed first and second nodes. *See, e.g., id.* at 12 n.12. Claim 3 requires that the one or more processors execute instructions to "receive" three pieces of information "from the first node via [] at least one network": "an indication of at least one folder," "indicia associated with at least one email address," and "an indication to share the at least one folder." Dropbox surmises that the one or more processors are external to the first node because the former receive information from the latter over a network. *See* ECF No. 61-9 ¶ 30.

Similar logic buttresses Dropbox's argument that the one or more processors must be external to the claimed second node. Claim 3 requires that the one or more processors "generate at least one email message identifying the at least one folder" and then "send, to a second node via the at least one network, the at least one email message." According to Dropbox, the one or more processors must be separated from the second node because the former sends email to the latter over a network. *See id.* ¶ 31.

Accordingly, Dropbox claims that the one or more processors constitute an "external" node—that is, a node separate from the claimed first and second nodes. It is undisputed that the Original Applications teach external nodes, but that teaching is, in Dropbox's estimation, limited. ECF No. 61 at 12 ("The *only* external nodes and servers discussed in the Original Applications are

10

used to store user data, locate stored user data, or act as a proxy to simply relay information along a network path."); ECF No. 61-9 ¶¶ 42, 44. Dropbox posits that the Original Applications do not describe an external node performing the tasks required of claim 3's one or more processors: receiving information, generating an email based on that combination, and sending that email to the second node. *See, e.g.*, ECF No. 61 at 14. Dropbox reasons that because the Original Applications do not describe an external messaging node performing these steps, the Original Applications cannot support claim 3.

The Court agrees with Dropbox that claim 3 requires separation between the one or more processors and the claimed first and second nodes. It also finds that, at the very least, referring to these "one or more processors" as an "external messaging node" is an efficient shorthand. But Dropbox has not sustained its burden. At bottom, Dropbox argues that the Original Applications describe a first node performing the send, receive (even piecemeal receipt), and generate steps. *See, e.g.*, ECF No. 61 at 15 (describing how the Original Applications show "that the user computer transforms the information it receives from a user into an email message to send to another user computer, i.e., one user computer generates an email message and sends it to another user computer"). And claim 3 requires a generic external node to perform these tasks instead. Under this conception, the gap separating the Original Applications and claim 3 is the migration of functionality from one node—the first node—to another node—an external node. The Court is satisfied that MO has provoked a genuine dispute of material fact as to whether passages from the Original Applications bridge that gap, staving off summary judgment.

### B.    Summary Judgment Is Inappropriate

MO's opposition is not the picture of clarity—the Court only just discerns its crux: the Original Applications describe the concept of a "node" (and the related concept of an "execution environment") broadly. ECF No. 72 at 7. The Original Applications state that a "node" refers "to

11

a device having a network interface component coupling the device to a network." ECF No. 61-4 ¶ 46. It continues, "the terms 'device' and 'node' used herein may refer to one or more devices and nodes, respectively, providing and/or otherwise included in an execution environment unless clearly indicated otherwise." *Id.*

The Original Applications also state:

> Exemplary devices included in and/or otherwise providing suitable execution environments . . . include personal computers, notebook computers, tablet computers, servers, portable electronic devices, handheld electronic devices, mobile devices, multiprocessor devices, distributed systems, consumer electronic devices, routers, communication servers, and/or any other suitable devices.

*Id.* ¶ 33. They go on:

> As stated, the various adaptations of the arrangement in FIG. 3A as well as the various adaptations of the arrangement in FIG. 3B illustrated and described herein are not exhaustive. For example, those skilled in the art will see based on the description herein that arrangements of components for performing the method illustrated in FIG. 2A and the method illustrated in FIG. 2B may each be distributed across more than one node and/or execution environment. For example, such an arrangements may operate at least partially in a browser in a one node and at least partially in a server in another node interoperating via a network.

*Id.* ¶ 102. The Original Applications state that the arrangement of components depicted in Figures 3A and 4 may perform the methods illustrated in Figures 2A and 2B. *See Id.* ¶¶ 99, 101.

Dr. Smith further remarked on how the Original Applications specify certain data flows illustrated in Figure 7 being "internal" to the "first node" and including a "message received via network 506" and/or "may include interoperation" with another node. *See* ECF No. 72-3 ¶ 37.

Dr. Smith concluded that these excerpts, taken in combination, teach how each disclosed node can be split into two execution environments. Dr. Smith posits that a person having ordinary skill in the art ("PHOSITA") would understand the Original Applications to disclose Figure 7's first node being split into what Dr. Smith refers to as Server1 and User Computer1. Further, the

second node may be split into Server2 and User Computer2. *Id.* ¶ 39. MO annotated Figure 7 to illustrate an embodiment Dr. Smith proposes that the relevant passages contemplate.



FIG. 7

ECF No. 72-3 ¶ 38.

Dr. Smith posits that Computer1 corresponds to claim 3's "first node" and Server1 corresponds to claim 3's external messaging node. *See, e.g., id.* ¶¶ 41–43, 76, 77, 86. (Or Computer2 is claim 3's "first node" and Server2 is claim 3's external messaging node. *See id.*) He further opines that "there is ample disclosure that Server1 may perform the various disclosed operations, and may further interoperate with a browser of the User Computer1 in order to distribute functional components to perform the disclosed operations." *Id.* ¶ 40. His opinion

13

continues, "there is clear support for" Server1 interoperating with User Computer 1 (or Server 2 interoperating with User Computer2) to carry out the claimed send/receive limitations. *Id.* Using the same rationale, Dr. Smith opined that Server2, interoperating with User Computer2, performs the generate step. *Id.* ¶¶ 84–89.

Dropbox replies, asserting that "the asserted claims require a messaging node that is *external* to (i.e. separate from) the first node, not a messaging functionality that is *within* the first node." ECF No. 75 at 7. As just described, Dr. Smith addressed that point in relating Server1 to claim 3's external messaging node. Dropbox has not confronted why that explanation is insufficient. It has not otherwise attempted to grapple with those passages from the Original Applications that MO leans on. To be sure, Dropbox concludes that "none of those disclosures describes the claimed external messaging node functionality, and thus they cannot support a finding that there was written description for those claim limitations." *Id.* at 6. Dropbox cites nothing in support of that contention, especially not expert testimony.[2] The Court is thus satisfied that MO has raised a genuine issue of material fact regarding support for claim 3 in the Original Applications. *See Vasudevan*, 782 F.3d at 683 (finding that an expert's opinion, "which was not challenged by any contrary expert testimony, at least raises a genuine issue of material fact regarding whether the patents" provide written description).

This holding accords with the reasoning in *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360 (Fed. Cir. 2019). There, the Federal Circuit reviewed a summary judgment determination

---

[2] Additionally, the only caselaw Dropbox relies on is *Knowles Elecs. LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358, 1365 (Fed. Cir. 2018), in which the Federal Circuit reviewed the PTAB's rejection of claims for substantial error. The instant Order hews to the summary judgment standard and is subject to *de novo* review. *Knowles* is not irrelevant, but it has little value to this Motion, which rests in a different posture altogether.

that claims to an ultrasonic base station lacked written description support. The Federal Circuit reversed, finding two brief sentences in the specification and dispute as to the complexity in the art sufficient to stave off summary judgment. *Id.* at 1369. The asserted patent described systems that included components like base stations and permitted "users to locate and identify portable devices in a facility." *Id.* at 1362. The patent explored infrared (IR) base stations in fine detail but dedicated only two sentences to ultrasonic base stations, suggesting them as alternatives to IR base stations. *Id.* at 1363.

Brevity did not doom the claims. *See id.* at 1366–69. "The fact that the bulk of the specification discusses a system with infrared components," did not, in the Federal Circuit's judgment, "necessarily mean that the inventors did not also constructively reduce to practice a system with ultrasonic components" (i.e. satisfy the written-description requirement). *Id.* at 1366 (citing *ScriptPro LLC v. Innovation Associates, Inc.*, 833 F.3d 1336, 1341 (Fed. Cir. 2016)). The more relevant question was whether the patent contained a sufficient level of detail "to adequately convey to a skilled artisan that the inventors possessed an ultrasonic embodiment." *Id.* at 1367. The necessary level of detail "varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.* (quoting *Ariad*, 598 F.3d at 1351). Because the parties' experts disputed the complexity and predictability in the art, the Court found summary judgment improper. *Id.*

Summary judgment is similarly inappropriate here: the brevity of the relevant passages is not dispositive; and there is a genuine dispute of material fact separating the experts. Like the patent in *Centrak*, the Original Applications disclose a primary embodiment in detail. But, like the plaintiff in *Centrak*, MO cannot support the relevant claims through the primary embodiment alone. The *Centrak* plaintiff had to rely on two sentences contemplating ultrasonic base stations as

15

substitutes for the primary embodiment's IR base stations. Likewise, MO relies on brief passages that purportedly contemplate splitting the operative nodes of the primary embodiments—and, accordingly, the functionality performed thereon—into different nodes or devices. The Original Applications' focus on a system in which a particular node performs certain steps does not necessarily mean that the inventors did not also constructively reduce to practice a system with an external node for performing those steps. *See id.* at 1366.[3]

As in *Centrak*, there is also a dispute among the experts here (alluded to above). Dropbox's expert, Dr. Gibbons, has opined on differences between the primary embodiment and that claimed. *See supra* Section III.A. He fixated upon the Original Applications' silence regarding an "external messaging node." *See id.* But Dr. Gibbons did not comment on passages from the Original Applications that are foundational to Dr. Smith's written-description opinion. Dropbox has not explained why these passages are insufficient "to find that the named inventors actually invented the claimed system." *Centrak*, 915 F.3d at 1368.[4] Dropbox opts instead to leave Dr. Smith's opinion unrebutted at a critical juncture and that, at the very least, raises a genuine dispute of material fact as to the sufficiency of the Original Applications' disclosure. *See id.*; *see also Vasudevan*, 782 F.3d at 683 (emphasizing the significance of unrebutted expert testimony).

---

[3] This is not to say that the Original Applications contemplate an external node as vividly as the *Centrak* patent contemplated implementing ultrasonic base stations. But nor has the plaintiff merely relied on boilerplate to gap-fill. *See D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018).

[4] Dropbox's expert would also have had to remark on the "complexity and predictability of the relevant technology" for the Court to discern whether passages Dr. Smith relies on are sufficiently detailed. *Centrak,* 1367 (quoting *Ariad*, 598 F.3d at 1351). It did not, despite bearing the burden of establishing that summary judgment is appropriate. *See Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). Evidence on this point is critical in establishing whether disputes of material fact are genuine.

Dropbox offers yet other arguments compelling this Court's consideration. None are sufficiently persuasive. For example, Dropbox chides MO for "altering"—even "doctor[ing]"—Figure 7 of the Original Applications "to argue that a [PHOSITA] would have found such disclosure *obvious*." ECF No. 75 at 5, 6. To the extent Dropbox suggests MO annotated Figure 7 in bad faith, the Court disagrees. To the extent Dropbox is concerned that MO's annotations confused or misled the Court, rest easy. Moreover, the Court will not characterize MO as arguing "obviousness." Almost any argument in support of written description in which the disclosure does not recite the claims *in haec verba* can be cast as an improper "obviousness" argument. That is not fair characterization here. (In addition, the Court's judgment is not based on any obviousness principles.)

Dropbox also criticizes Dr. Smith for "refus[ing] to state whether the Original Applications disclose an external messaging node." ECF No. 75 at 5. That testimony is not dispositive of the written description issue. "In context, a reasonable fact finder could interpret Dr. [Smith's] testimony not as a legal conclusion regarding written description, but as an acknowledgement that the [Original Application's] specification did not literally" recite an "external messaging node" *in haec verba*. *Centrak*, 915 F.3d at 1369. Dr. Smith, after all, challenged Dropbox's coining of the term "external messaging node." For example, Dr. Smith notes in his opinion that "these supposed 'intermediary' 'external messaging node' elements simply do not exist in any of the claims." ECF No. 72-3 ¶ 30. This semantic dispute is on full display in the deposition testimony Dropbox relies on. *See* ECF No. 75-2 at 92:23–94:19. On summary judgment, the court draws all reasonable factual inferences favor the non-movant. *Phillips v. Sanofi U.S. Servs.*, 994 F.3d 704, 707 (5th Cir. 2021). Thus, the Court is predisposed to find that Dr. Smith's testimony merely betrays an animosity toward Dropbox's invocation of a term not present in the relevant patents. The Court

will not deem this testimony an admission that claim 3 cannot benefit from the filing date of the Original Applications.

In its reply brief, Dropbox criticizes annotated Figure 7, arguing that it does not disclose what is claimed: "an intermediate node that is not controlled by either the 'first' or 'second' user . . . ." ECF No. 75 at 5–6. Dropbox does not expand on this "control" requirement or pinpoint its origin in claim 3. There is no clear antecedent basis for this argument in Dropbox's Motion, Dropbox did not raise this requirement during claim construction, and the Court is not convinced that MO's opposition demanded springing this argument in reply. Dropbox has therefore waived this argument. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived."); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-cv-00097, 2019 U.S. Dist. LEXIS 149649, at *7 (W.D. Tex. May 30, 2019) (holding claim construction arguments waived).

In sum, MO offered unrebutted expert testimony to raise a genuine issue of material fact. Dropbox concedes that the Original Applications teach external nodes. Dropbox concedes that the Original Applications describe a first node performing send, receive, and generate steps. In Dropbox's view, these disclosures do not support claim 3, which requires that an external node perform send, receive, and generate steps. Based on Dropbox's conception, claim 3 modified the Original Applications by migrating the send, receive, and generate steps to an external node. Dr. Smith has offered an opinion that identifies passages in the Original Applications that purportedly contemplate migrating functionality from a first node to an external node. Dr. Gibbons has not rebutted that testimony and Dropbox has not established why the passages from the Original Applications that Dr. Smith relies upon are inadequate. Accordingly, MO has raised a genuine issue of material fact regarding support for claim 3 in the Original Applications.

### C.     Representativeness

Dropbox's arguments regarding claim 1 of the '158 patent mirror those against claim 3. The Court need not decide today whether claim 1 requires an "external messaging node." *See* ECF No. 61 at 11 n.8. But even assuming it does, the same rationale applied to claim 3 above dooms Dropbox's written-description arguments on claim 1. Dropbox further asserts that claims 1 and 3 of the '158 patent exemplify the other asserted independent claims in relevant aspects. *See id.* at 7, 12. Assuming that to be true, without deciding as much, the Court is satisfied that summary judgment is just as inappropriate for those claims as it is for claims 1 and 3.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff Dropbox, Inc.'s Motion for Partial Summary Judgment is **DENIED**.

SIGNED this 18th day of January, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE