**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| DROPBOX, INC., | |
|     Plaintiff / Counterclaim Defendant, | **Civil Action No. 6:20-cv-00251-ADA** |
|     v. | **Lead Case** |
| MOTION OFFENSE, LLC, | |
|     Defendant / Counterclaim Plaintiff. | **JURY TRIAL DEMANDED** |
| MOTION OFFENSE, LLC, | |
|     Plaintiff, | **Civil Action No. 6:21-cv-00758-ADA** |
|     v. | |
| DROPBOX, INC., | |
|     Defendant. | |

**MOTION OFFENSE LLC'S MOTION TO STRIKE DROPBOX, INC.'S INEQUITABLE CONDUCT DEFENSE**

Dated:  April 13, 2022

Timothy Devlin
Derek Dahlgren (pro hac vice)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*Attorneys for* MOTION OFFENSE, LLC

# TABLE OF CONTENT

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................. 1

   A.   Background ............................................................................................................ 1

   B.   Citations to Dropbox Art in the File Histories of the '158, '052, and '215 Patents......... 2

   C.   Dropbox's Deficient Allegations of Inequitable Conduct............................................. 3

III. LEGAL STANDARD ..................................................................................................... 6

   A.   Rule 12 Requires that Affirmative Defenses Should be Stricken if They do not State a Facially Plausible Claim for Relief ......................................................................... 6

   B.   Under Rule 9(b), Inequitable Conduct Allegations Must Provide Particularized Factual Bases for Every Legal Element ................................................................................ 7

IV.  ARGUMENT .................................................................................................................. 9

   A.   Dropbox Fails to Plead Particularized Facts Permitting a Reasonable  Inference of a Specific Intent to Deceive the PTO ........................................................................... 9

      1.   There is No Basis for any Inference that the Inventor or Unnamed Prosecuting Attorney(s) Made a Deliberate Decision to Withhold Known Material Information........... 10

      2.   Dropbox Allegations Regarding the '215 Patent are Ambiguous and Do Not Come Close to Meeting the Pleading Standard for Inequitable Conduct....................................... 13

   B.   Dropbox Has Failed to Properly Plead Materiality Because the Prior Dropbox Products Were Distinguishable.............................................................................................. 14

V.   CONCLUSION.............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Aetna Life Ins. Co.*,
  No. EP-13-CV-131-KC, 2013 U.S. Dist. LEXIS 95087 (W.D. Tex. July 8, 2013). ................. 7

*Capella Photonics, Inc. v. Cisco Sys.*,
  77 F. Supp. 3d 850 (N.D. Cal. 2014). ...................................... 8

*Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007)................................................. 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)....................................................... passim

*iLife Techs., Inc. v. Aliphcom*,
  No. 14-cv-03345-WHO, 2015 U.S. Dist. LEXIS 20743 (N.D. Cal. Feb. 19, 2015). ............... 14

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir. 1982). ............................................ 7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009). ........................................... 8

*King Auto., Inc. v. Speedy Muffler King, Inc.*,
  667 F.2d 1008 (CCPA 1981). ............................................. 11

*Optium Corp. v. Emcore Corp.*,
  603 F.3d 1313 (Fed. Cir. 2010)........................................... 14

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993).......................................... 14

*SunPower Corp. v. PanelClaw, Inc.*,
  No. 12-1633-MPT, 2016 U.S. Dist. LEXIS 127090 (D. Del. Sep. 19, 2016). .......................... 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011).................................. 9, 10, 19

*Theta IP, LLC v. Samsung Elecs. Co.*,
  No. WA:20-CV-00160-ADA, 2021 U.S. Dist. LEXIS 106033 (W.D. Tex. June 7, 2021)........ 9

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010). ............................................ 7

**Other Authorities**

Fed. R. Civ. P. 12(f). ....................................................... 7

## I.     INTRODUCTION

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Motion Offense LLC ("Motion Offense") moves to strike the affirmative defenses of inequitable conduct raised for the first time in Dropbox's Second Amended Answer (Dkt. 119) in the -251 action and its Amended Answer (Dkt. 26) in the -758 action.[1]

Dropbox's allegations of inequitable conduct in each of these proceedings are unfounded and do not even attempt to satisfy the exacting standard for pleading inequitable conduct under the Federal Rules and governing law.  Indeed, in the -758 action, Dropbox's allegations are even more deficient, as Dropbox does not present *any* relevant facts concerning prosecution of the '215 patent asserted there.  Therefore, the Court should strike the affirmative defense of inequitable conduct in both actions.

## II.    STATEMENT OF FACTS

### A.     Background

Motion Offense is the assignee and owner of U.S. Patent Nos. 10,013,158 (the "'158 patent"), U.S. Patent No. 10,021,052 (the "'052 patent"), U.S. Patent No. 10,303,353 (the "'353 patent"), U.S. Patent No. 10,613,737 (the "'737 patent"), U.S. Patent No. 10,587,548 (the "'548 patent"), and U.S. Patent No. 11,044,215 (the "'215 patent") (collectively, the "patents in suit"). The named inventor of the patents in suit is Robert Paul Morris.

The patents in suit claim priority at least to Application No. 14/274,623 ("'623 Application"), which in turn claims priority to two 2012 applications: Application No.

---

[1] Because Dropbox's allegations of inequitable conduct are substantively identical in both pleadings, Motion Offense addresses both in this consolidated Motion to Strike.  The references to "Amended Answer" herein will be to the Second Amended Answer in the -251 action (Dkt. 119).

13/626,635 ("'635 Application"), filed on September 25, 2012, and Application No. 13/624,906 ("'906 Application"), filed on September 22, 2012.

In addition to the numerous references cited during prosecution of the '158 and '052 patents, the Applicant cited all of the references asserted by Dropbox in the instant actions during prosecution of the recently issued '215 patent, including numerous documents and materials relating to prior versions of Dropbox's own products.  (*See* Ex. 1 (excerpts from '215 patent file history, IDS dated May 18, 2021).)   The '215 patent issued on June 22, 2021.

On March 23, 2022, Dropbox filed its Second Amended Answer in the -251 action and an Amended Answer in the -751 action, the last day for amending its pleadings.  Among other things, Dropbox added an Eleventh Affirmative Defense of unenforceability due to inequitable conduct—it did so despite knowing of all the alleged "facts" for a year or more.  Specifically, Dropbox now alleges that:

> Motion Offense's claims for relief are barred in whole or in part by inequitable conduct because the applicant, the prosecuting attorneys, and/or those substantively involved in prosecution failed to disclose information and/or made false or misleading statements to the United States Patent & Trademark Office ("USPTO"), with the intent to deceive the examiner, regarding Dropbox products and other prior art of which they were aware that was but-for material to the patentability of the asserted patents . . . .

(Dkt. 119 at 12-18, ¶ 11.)

Dropbox has not previously alleged inequitable conduct in these actions or asserted that the patents are unenforceable.  It added this defense on the last day to amend the pleadings and shortly before depositions were set to begin.  It has also used this baseless new defense as justification for sweeping email discovery.

## B.   Citations to Dropbox Art in the File Histories of the '158, '052, and '215 Patents

Dropbox is factually incorrect that during the prosecution of the '158 or '052 patents, the applicant did not disclose failed to disclose information about Dropbox.  A quick review of the

2

prosecution histories of these patents confirms that the applicant cited at least the following

patents and patent applications assigned to Dropbox:

| *'158 patent* | *'052 patent* |
|---|---|
| U.S. Pat. No. 8825597 | U.S. Pat. No. 9032295 |
| U.S. Pat. Appl. No. 20140067929 | U.S. Pat. No. 8825597 |
| | U.S. Pat. No. 9049176 |
| | U.S. Pat. No. 8645466 |
| | U.S. Pat. Appl. No. 20140067865 |
| | U.S. Pat. Appl. No. 20140067929 |
| | U.S. Pat. No. 9075954 |
| | U.S. Pat. No. 9430669 |
| | U.S. Pat. No. 9692826 |
| | U.S. Pat. No. 10091296 |
| | U.S. Pat. No. 10395045 |
| | U.S. Pat. No. 10885209 |
| | U.S. Pat. No. 10713966 |
| | U.S. Pat. No. 10607498 |

In addition, during prosecution of the '215 patent, the applicant cited all of the references,

including all of the Dropbox prior art, Dropbox now relies on in its invalidity contentions in

these actions.  (Ex. 1.)  The claims were allowed.

### C.    Dropbox's Deficient Allegations of Inequitable Conduct

Dropbox advances a facially-defective affirmative defense of unenforceability based on

inequitable conduct by the inventor Robert Paul Morris, and the "prosecuting attorneys, and/or

those substantively involved in prosecution" of at least the '158, '052, and '215 patents, based on

allegedly "fail[ing] to disclose information and/or ma[king] false or misleading statements" to

the USPTO regarding "Dropbox products and other prior art . . . ."  (Dkt. 119 at ¶ 11.)

Dropbox begins its allegations by asserting that "on information and belief," at least Mr.

Morris was "familiar with the operation of Dropbox products" before the prosecution of the

applications leading to the '158 or '052 patents, or the '635 or '906 parent applications.  (Id. ¶

14.)  Dropbox then pivots to relying on Motion Offense's infringement allegations concerning

claim 1 of the '158 and '052 patents.  Specifically, Dropbox alleges that under Motion Offense's infringement theories, Dropbox products as of 2012 included the same "Dropbox-generated email" and "upload feature" now accused of infringing regarding certain limitations of the asserted claims.  For example, Dropbox alleges that the below limitation in claim 1 of the '158 patent was taught by a "Dropbox-generated email" as early as 2012:

> after the information associated with the at least one folder, the object associated with the at least one email address, and the indication of the selection of the third user interface element is sent via the at least one network; receive, at the second node via the at least one network, at least one email message identifying the at least one folder and including a reference to the at least one folder, without including a file attachment with the at least one email message.

(Dkt. 119 ¶¶ 15-16.)  Similarly, Dropbox alleges that the following limitation in claim 1 of the '052 patent was taught by an "upload feature" as early as 2012:

> detecting, utilizing the at least one third interface at the second node, a selection of the seventh user interface element, where the detection of the selection of the seventh user interface element indicates that the at least one file is to be caused to be uploaded; sending, from the second node via the at least one network, an indication of the selection of the seventh user interface element for causing the at least one file to be uploaded.

(*Id.* ¶¶ 24, 25, 27).

Dropbox does not allege that any other limitations of '158 claim 1 or '052 claim 1, or any limitations of the '215 patent, were present in these "Dropbox products."[2]  Indeed, Dropbox does not allege any particularized facts whatsoever regarding the claims of the '215 patent.  Moreover, Dropbox does not provide the sources for any of its information and fails to explain how the information alleged supports its new theory.  Similarly, the pleaded allegations generally do not even follow from the averred information under any reasonable interpretation.

---

[2] Claim 1 of the '158 patent spans nearly 50 lines, while claim 1 of the '052 patent spans nearly 115 lines.

Dropbox next cites the specification of the '158 and '052 patents as purported support for the inventor's "awareness" of Dropbox:

> A variety of means exist for sharing filed [sic], folders, and other data via [a] network. For each a user must know how to configure and/or setup the sharing. ***For example, sharing a file [via] a Samba file system is different than sharing a via [sic] cloud based storage system, such as DROPBOX. Sharing via email is still different.*** Sharing copies of files is perhaps the best know[n] means and most widely used means for sharing copies. It would [be] useful if sharing files, folders, directory data, and other network accessible data were as easy as sending an attachment in an email.

(Dkt. 119 at 14, citing '158 patent at 1:55-67 (emphasis in original).)

In terms of the "who," Dropbox identifies Mr. Morris along with the unnamed "prosecuting attorneys, and/or those substantively involved in prosecution of" the '158, '052, and '215 patents, as the individuals who engaged in inequitable conduct.  However, Dropbox does not allege any specific facts as to the identities or roles of any individuals other than Mr. Morris.  The unnamed individuals are not otherwise accused of any inequitable conduct.

The "what" only addresses "Dropbox products" without further details on any specific "products" Dropbox alleges the applicant "failed to disclose," and fails to tie any of these unnamed products to the various references included in Dropbox's invalidity contentions, and fails to demonstrate how the alleged disclosure of a single limitation from each patent rises to the level of but-for materiality when they were not the basis for allowance and there has been absolutely no attempt to show how the information is not cumulative of the other disclosed art.  Indeed, the '215 patent was allowed over Dropbox's invalidity contentions.

To the extent relevant, Dropbox also cites an "upload feature" and a "Dropbox-generated email" but again fails to tie these features to any specific products.  Dropbox thus appears to allege, at best, that Mr. Morris was generally aware of these *features*, but did not disclose them to the PTO.  Aside from these two features, no other "Dropbox products" or features are even identified, let alone analyzed.  This failure is fatal to Dropbox's attempt to include such

unspecified "prior art" as bases for its inequitable conduct allegations.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329-30 (Fed. Cir. 2009).

The Amended Answer seeks to provide the "when" in general terms by charging only that the inventor was under a general "duty of candor under 37 C.F.R. § 1.56." (Dkt. 119 ¶¶ 20, 29.) Dropbox insinuates information about its earlier products was improperly withheld during prosecution of the parent applications, but as best can be gleaned from its defense, it is relying on an alleged lack of disclosure during prosecution of the applications the led to the '158 and '052 patents.

As for "why" and "how," the Amended Answer conclusorily asserts that the "Dropbox products" were material to the patentability of at least '158 patent claim 1 and '052 patent claim 1. However, other than the specific limitations from both claims set forth above, Dropbox fails to allege how any other limitations of the claims were taught by any "Dropbox products" or why the failure to disclose the "Dropbox-generated email" and "upload feature" was material to the patentability of the claims as a whole, and not cumulative of the art already disclosed.

Finally, Dropbox asserts that the "single most reasonable inference" is that the "applicant" acted with a "specific and deliberate intent to deceive." (Dkt. 119 ¶¶ 29.) Dropbox then adds an additional layer of conjecture charging that ***each*** of the unnamed individuals, including the "prosecuting attorneys and/or those substantively involved in prosecution . . . supplied materially misleading information and/or failed to disclose but-for material information to the USPTO." The Amended Answer does not plead ***any*** facts to support specific intent.

## III.   LEGAL STANDARD

### A.    Rule 12 Requires that Affirmative Defenses Should be Stricken if They do not State a Facially Plausible Claim for Relief

Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P.

12(f).  The function of a motion to strike under Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal citations omitted).  Even though motions to strike are generally disfavored, "a motion to strike a defense should be granted where the challenged defense is insufficient as a matter of law."  *Brown v. Aetna Life Ins. Co.*, No. EP-13-CV-131-KC, 2013 U.S. Dist. LEXIS 95087, at *4 (W.D. Tex. July 8, 2013) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)).

### B.   Under Rule 9(b), Inequitable Conduct Allegations Must Provide Particularized Factual Bases for Every Legal Element

Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity."  "[O]ne of the purposes of Rule 9(b) is 'to protect those whose reputation would be harmed as a result of being subject to fraud charges.'"  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 n. 6 (Fed. Cir. 2009) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

Under Federal Circuit law, which governs pleading of inequitable conduct claims, *see Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007), "all averments of fraud and inequitable conduct, including affirmative defenses, fall within the strictures of Rule 9(b) and must be stated with particularity."[3]  *Capella Photonics, Inc. v. Cisco Sys.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014); *SunPower Corp. v. PanelClaw, Inc.*, No. 12-1633-MPT, 2016 U.S. Dist. LEXIS 127090, at *20 (D. Del. Sep. 19, 2016).

---

[3] "Since inequitable conduct 'is an equitable defense to patent infringement . . . these pleading requirements would logically apply whether a defendant is asserting it as a counterclaim or an affirmative defense.'"  *ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1059 (D. Nev. 2016).

To meet the heightened pleading standards of Rule 9(b), a pleading of inequitable conduct "must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328; *Theta IP, LLC v. Samsung Elecs. Co.*, No. WA:20-CV-00160-ADA, 2021 U.S. Dist. LEXIS 106033, at *3-4 (W.D. Tex. June 7, 2021). The intent element must be pled with "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of . . . the falsity of the material misrepresentation, and (2) . . . misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. Further, the elements of knowledge and of deceitful intent must be "reasonable and drawn from a pleading's allegations of underlying fact." *Id.* at 1329 n.5.

Materiality is the touchstone of the first element. In *Therasense*, the Federal Circuit held that "the materiality required to establish inequitable conduct is **but-for** materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).

With respect to the "intent-to-deceive" element, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* at 1290. "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does **not** satisfy this intent." *Id.* at 1290. Importantly, "the specific intent to deceive must be **the single most reasonable inference** able to be drawn from the evidence." *Id.* at 1290. "Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive **cannot** be found." *Id.* at 1290-91.

Providing the "what" and "where" of an alleged material omission requires the pleading to identify the claim elements to which the allegedly withheld references relate and where in the references each element is to be found. *Exergen*, 575 F.3d at 1329. Similarly, identifying the particular claim elements or combinations thereof that are absent from the file history are necessary to explain both "why" the allegedly withheld information is material and "how" an examiner would have used that information in assessing the patentability of the claim. *Id.* at 1329-30.

The failure to plead these requisite factual predicates is "fatal under Rule 9(b)." *Id.* at 1330. Accordingly, a pleading may not "simply aver[] the substantive elements of inequitable conduct" without any factual support and still satisfy Rule 9(b). *Id.* at 1326-27 & n.3 (citing *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (CCPA 1981) ("Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud")). Likewise, merely stating the conclusion in general terms—that the allegedly withheld references are "material"—is not enough. *See Exergen*, 575 F.3d at 1326-27, 1329-30.

## IV. ARGUMENT

### A. Dropbox Fails to Plead Particularized Facts Permitting a Reasonable Inference of a Specific Intent to Deceive the PTO

The underlying "facts" proffered in the Amended Answers to support the alleged specific intent to deceive the PTO fail to give rise to any plausible inference of deceptive intent on the part of any of the inventor. These averments begin by stating only that on "information and belief," the inventor was "familiar with the operation of Dropbox products" and, without tying these "Dropbox products" to *any* specific piece of prior art, goes on to allege that the inventor did not "disclose information regarding the operation of [unnamed] Dropbox's products" to the Patent Office during prosecution of the '158 and '052 patents. (Dkt. 119 ¶¶ 14, 23.) Yet,

Dropbox's ultimate conclusion—that the inventor "supplied materially misleading information and/or failed to disclose but-for material information to the USPTO with specific and deliberate intent to deceive"—is nothing more than an unexplained and unsubstantiated belief.  (*Id.* ¶¶ 20, 29.)  Dropbox's allegations of specific intent therefore are not based on anything other than an alleged "awareness" of "Dropbox products" and an alleged failure to disclose them to the Patent Office, not an "intent to deceive."  This falls far short of meeting the pleading standards for such a serious accusation.

Rule 9(b) only permits pleading specific intent to deceive the PTO on "information and belief" if the pleading sets forth the ***specific facts*** upon which the belief is reasonably based.  But the Amended Answer "provides neither the 'information' on which it relies nor any plausible reasons for its belief."  *Exergen*, 575 F.3d at 1330-31.  Moreover, the operative elements of an inequitable conduct defense are pled with nothing more than an allegation that is the "single most reasonable inference."  That is not enough.  The pleading fails because it lacks factual support and fails to provide any basis to exclude other more plausible inferences from the same set of facts.  This meager pile of unsupported guesswork cannot reach the high bar to plead deliberate intent to deceive, nor even make it plausible.

**1.      There is No Basis for any Inference that the Inventor or Unnamed Prosecuting Attorney(s) Made a Deliberate Decision to Withhold Known Material Information**

Dropbox jumps to the baseless conclusion that that the "single most reasonable inference from the facts and circumstances alleged . . . is that the applicant, prosecuting attorneys, and/or those substantively involved in prosecution of ['235/'223/'980] Application supplied materially misleading information and/or failed to disclose but-for material information to the USPTO with specific and deliberate intent to deceive."  (Dkt. 119 ¶¶ 20, 29.)  However, all of the "facts and

circumstances" Dropbox cites are either irrelevant or fail to meet the heightened requirement for pleading inequitable conduct.

First, Dropbox asserts that on "information and belief," the inventor Robert Paul Morris was "familiar with the operation of Dropbox products." (Dkt. 119 ¶¶ 14, 23.) However, in this and subsequent paragraphs, Dropbox fails to tie any of these unnamed "Dropbox products" to a specific prior art reference or system that Dropbox now alleges teaches each element of the asserted claims. Worse, Dropbox goes on to impute the knowledge and actions of unnamed "prosecuting attorneys" and "those substantively involved in prosecution" to the inventor, because it asserts that "[t]he applicant, the prosecuting attorneys, and/or those substantively involved in prosecution of the ['235/'223/'980] Application had awareness of Dropbox's products prior to September 22, 2012 but failed to disclose information regarding the operation of Dropbox's products to the USPTO." (*Id.* ¶¶ 12, 17, 21, 26.)

These allegations fail to comply with Rule 9(b)'s requirement to "include sufficient allegations of underlying facts from which a court may reasonably infer that ***a specific individual*** (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information ***with a specific intent to deceive*** the PTO." *Exergen*, 575 F.3d at 1328-29. Dropbox's reliance on vague "information and belief," and on unnamed other individuals, cannot support this weighty allegation. Indeed, the same "facts" are consistent with many other reasonable inferences—such as the inventor's lack of substantive involvement with prosecution or a belief that these unnamed "Dropbox products" were not material to the claims of the '235, '223, or '980 applications, or were simply cumulative of other cited art. As set forth in greater detail below, the Amended Answer fails to identify the required factual support for its conclusion that Dropbox's 2011 or 2012 "products" were material to patentability.

The pleading of specific intent is insufficient because "an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)." *Id.* at 1329 n.5.  The Amended Answer's threadbare, tangential, and conclusory factual allegations relating to specific intent—built upon multiple layers of information and unsubstantiated  allegations—do not support any such inference, let alone a reasonable one.

At most, the proffered allegations plausibly imply that the inventor had a duty to disclose information material to patentability, and was aware of some alleged features of "Dropbox products" that corresponded to one claim limitation.  But nothing in the Amended Answer supports any plausible inference that the inventor ***deliberately*** decided to withhold a reference or other information known to be material.  "[A]n intent to deceive cannot be inferred solely based upon the failure to disclose known information, even if it is highly material"—which, as discussed below, Dropbox's 2011 or 2012 products are ***not***.  *iLife Techs., Inc. v. Aliphcom*, No. 14-cv-03345-WHO, 2015 U.S. Dist. LEXIS 20743, at *24 (N.D. Cal. Feb. 19, 2015) (citing *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993); *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1322 (Fed. Cir. 2010)).  This is precisely what Dropbox seeks to do in its Amended Answer.

Permitting these inequitable conduct defenses to stand would improperly presume specific intent to deceive the PTO any time an inventor is arguably "aware" of  an allegedly material reference, but does not disclose it.  The bar is higher.  What is required is factual support for an inference of a ***deliberate*** decision to withhold a material reference, and Dropbox's general allegations do not pass muster.

      2.      **Dropbox Allegations Regarding the '215 Patent are Ambiguous and Do Not Come Close to Meeting the Pleading Standard for Inequitable Conduct**

Dropbox's Amended Answer in the -758 action addressed only the prosecution of the '158 and '052 patents.  Neither of those patents is asserted in the -758 action, only the '215 patent is.  However, Dropbox seeks to confuse the facts surrounding the prosecution of the '215 patent by alleging that "the applicant, the prosecuting attorneys, and/or those substantively involved in prosecution of the '980 Application [that led to the ***'215 patent***] submitted materially false or misleading statements to the USPTO and/or failed to disclose material prior art" solely because they failed to disclose certain information about Dropbox in the prosecution of the ***'052 and '158 patents***.  (Dkt. 26 in the -758 action at ¶¶ 30, 38.)

To the extent Dropbox suggests that the applicant did not disclose any information regarding prior Dropbox products during prosecution of the ***'215 patent***, it is ***factually wrong***.  During that prosecution, the applicant disclosed the prior art references Dropbox now relies on in the -251 action, including voluminous information about prior versions of Dropbox and other similar art that it charted in its invalidity contentions.  (*See* Ex. 1.)  Dropbox's allegations of inequitable conduct regarding the '215 patent are frivolous at best.  The examiner had the Dropbox 2011 and other art that Dropbox had cited against the '158 and '052 patents in its invalidity contentions before it and found the claims of the '215 patent to be patentably distinct.

To the extent that Dropbox alleges the incorporated statement in the specification of the '635 application was a misleading statement qualifying as inequitable conduct, it is again demonstrably wrong.  The statement referenced is:

> A variety of means exist for sharing filed [sic], folders, and other data via [a] network. For each a user must know how to configure and/or setup the sharing. ***For example, sharing a file [via] a Samba file system is different than sharing a via [sic] cloud based storage system, such as DROPBOX.  Sharing via email is still different.*** Sharing copies of files is perhaps the best know[n] means and most widely used means for sharing copies. It would [be] useful if sharing files, folders,

> directory data, and other network accessible data were as easy as sending an
> attachment in an email.

This is not a clearly misleading statement.  The most reasonable inference is that the statement "[s]haring via email is still different" is referring to the traditional method of sending emails ***with*** attachments.  The following language in the specification supports this.  It goes on to state that "[s]haring copies of files is perhaps the best know[n] means and most widely used means for sharing copies.  It would [be] useful if sharing files, folders, directory data, and other network accessible data were as easy as sending an attachment in an email."  That is, the specification identifies a common and traditional method for sharing files via emails with attachments, and states a desire for a new method that is just as simple.  This is ***not*** misleading.

Dropbox refers to the statement in the '158 patent's abstract, but severely ellipses it.  The full statement in the abstract is as follows:

> Methods, apparatuses, and systems are described for sharing a folder and any
> contents (e.g., file(s))) thereof, via at least one communication.  In an aspect, the
> folder and any contents (e.g. file(s)) thereof may be shared through a specific
> combination of capabilities or operations involving an email message and a file
> explorer interface without an attachment included with the at least one email
> message.

('158 patent. at Abstract.)  This statement is not contradictory.  Rather it is completely consistent with the statement in the specification.  Dropbox's assertion that the "only reasonable inference" is inequitable conduct is baseless.

### B.   Dropbox Has Failed to Properly Plead Materiality Because the Prior Dropbox Products Were Distinguishable

Although the Amended Answer's deficiencies regarding specific intent alone require dismissal, the alleged materiality of the purported "Dropbox products" is also defective in a number of ways.  At the pleading stage, the *Exergen* standard requires identifying "the specific who, what, when, where, and how of the material misrepresentation or omission committed

before the PTO." *Exergen*, 575 F.3d at 1327.  But as shown here, those particularized factual allegations are precisely what the Amended Answer fails to plausibly provide—at least for the required identification of the "what," "where," "why," and "how" of the charged inequitable conduct.  *See id.* at 1329-30.

The specification of the '158 patent disclosed the existence of prior "Dropbox products." The claims were still allowed when the examiner plainly would have been made aware of Dropbox.  Dropbox's purported support for its materiality allegations defeats its own claims.

Dropbox's conclusory statements regarding alleged similarities between certain claim elements and corresponding features of Dropbox products also fail. Dropbox first alleges that prior Dropbox products included a "Dropbox-generated email" corresponding to the following limitation in claim 1 of the '158 patent:

> after the information associated with the at least one folder, the object associated with the at least one email address, and the indication of the selection of the third user interface element is sent via the at least one network; receive, at the second node via the at least one network, at least one email message identifying the at least one folder and including a reference to the at least one folder, without including a file attachment with the at least one email message.

(Dkt. 119 ¶¶ 15-16.)  Similarly, Dropbox alleges that prior Dropbox products included an "upload feature" corresponding to the following limitation in claim 1 of the '052 patent:

> detecting, utilizing the at least one third interface at the second node, a selection of the seventh user interface element, where the detection of the selection of the seventh user interface element indicates that the at least one file is to be caused to be uploaded; sending, from the second node via the at least one network, an indication of the selection of the seventh user interface element for causing the at least one file to be uploaded.

(*Id.* ¶¶ 24, 25, 27).  However, Dropbox fails to provide any actual evidence that anything in the prior Dropbox products actually taught those limitations.

Moreover, other than its cherry-picked limitations, Dropbox fails to consider any claim of the '158 or '052 patents as a whole.  It does not consider the reasons for allowance in the

prosecution history.  Nor does it make any effort to demonstrate its alleged Dropbox prior art is not cumulative art already of record.  Nor could it.  Prior art was disclosed involving emails as well as uploading files—the two purported features it claims are found in its prior art.  (*See* Ex. 2 (excerpts from '052 patent file history, Non-Final Rejection dated February 2, 2018).) Dropbox's failures are fatal.  It has not met its burden as to the "what," "where," and "how" of materiality.  It is completely unclear what specific information in the prior Dropbox products, if disclosed to the PTO, would have been material to issuance even applying a lesser pleading standard.

Moreover, Dropbox's materiality allegations are fatal because Dropbox fails to identify any disclosures in these prior Dropbox products corresponding to any other limitations of these claims,[4] or even acknowledge any other limitations.  Thus, even if the prior Dropbox products had been before the USPTO, Dropbox sidesteps its obligation to locate those claim elements therein.  Dropbox's assertion that inequitable conduct is "the single most reasonable inference" from the prosecution histories is therefore misplaced because a far more plausible inference was that the Patent Office allowed the claims because there were other limitations of the claims that were not present in prior Dropbox products or any of the prior art.

Taken together, Dropbox's facially implausible and conclusory allegations cannot "explain both 'why' the allegedly withheld information is material and not cumulative and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30.  These factual deficiencies in the Amended Answer "themselves are fatal under Rule 9(b)."  *Id.* at 1330.  Accepting this sort of pleading allegation would require Motion Offense to figure out what alleged disclosures and/or activities Dropbox is contending to

---

[4] Claim 1 of the '158 patent spans nearly 50 lines, while claim 1 of the '052 patent spans nearly 115 lines.

be material prior art, turning the *Exergen* pleading requirements on their head, and thus cannot support any reasonable inference of materiality.

## V.    CONCLUSION

For the reasons set forth above, the Court should strike Dropbox's Affirmative Defense of unenforceability due to inequitable conduct in both consolidated matters. They are foreclosed by Rule 9(b), *Exergen*, and *Therasense*.

Dated:  April 13, 2022

*s/ Derek Dahlgren*
Timothy Devlin
Derek Dahlgren (pro hac vice)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*Attorneys for* MOTION OFFENSE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Derek Dahlgren*
Derek Dahlgren