**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| DROPBOX, INC., <br><br> *Plaintiff / Counterclaim Defendant,* <br><br> v. <br><br> MOTION OFFENSE, LLC, <br><br> *Defendant / Counterclaim Plaintiff.* | **Civil Action No. 6:20-cv-00251-ADA** <br><br> **JURY TRIAL DEMANDED** |
| MOTION OFFENSE, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> DROPBOX, INC., <br><br> *Defendant.* | **Civil Action No. 6:21-cv-00758-ADA** <br><br> **JURY TRIAL DEMANDED** |

**MOTION OFFENSE, LLC'S MOTION TO EXCLUDE THE DAMAGES OPINIONS
AND TESTIMONY OF ROBERT A. HUTCHINS**

Dated:  February 24, 2023

Timothy Devlin (DE Bar No. 4241)
Derek Dahlgren (*pro hac vice*)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*Attorneys for* MOTION OFFENSE, LLC

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

**TABLE OF CONTENTS**

SUMMARY OF MOTION ................................................................................................ 1

ARGUMENT AND AUTHORITIES ............................................................................... 1

I.     LEGAL STANDARDS ........................................................................................ 1

II.    ARGUMENT ........................................................................................................ 3

   A.   Hutchins Does Not Base His Reasonable Royalty Opinion On Reliable Quantitative
        Data Regarding The Incremental Value Of The Asserted Patents ............................................. 3

   B.   Hutchins Fails to Establish the Guideline Transactions are Technically Comparable .... 4

   C.   Hutchins Fails to Establish the Guideline Transactions are Economically Comparable . 9

   D.   Hutchins Bases His Opinion and Testimony On Unreliable Principles and Methods ... 12

III.   CONCLUSION .................................................................................................... 17

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADASA Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) ............................................................................. 6

*Allen v. Pa. Eng'g Corp.*,
  102 F.3d 194 (5th Cir. 1996) ........................................................................... 3, 7

*Aubrey v. Barlin*,
  No. 1:10-cv-00076-DAE,
  2015 U.S. Dist. LEXIS 139961 (E.D. Tex. Oct. 14, 2015) .................................. 9

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*,
  809 F.3d 1295 (Fed. Cir. 2015).......................................................................... 3

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................. 1, 2, 7

*Elsholtz v. Taser Int'l, Inc.*,
  No. 4:05-cv-00287-Y,
  2007 U.S. Dist. LEXIS 70825 (E.D. Tex. Sep. 25, 2007) .................................. 8

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010)........................................................................... 6

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012) ............................................................................. 3

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ................................................................... 2, 14, 19

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)............................................................................................ 2

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)............................................................................... 6

*Moore v. Ashland Chem.,Inc.*,
  151 F.3d 269 (5th Cir. 1998) ............................................................................. 8

*Paz v. Brush Engineered Materials Inc.*,
  555 F.3d 383 (5th Cir. 2009) ................................................................... 5, 18, 19

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015)........................................................................... 2

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)................................................................. 6, 11, 12

*United States v. Fullwood*,
  342 F.3d 409 (5th Cir. 2003) ..................................................................... 3, 19

*United States v. Valencia*,
  600 F.3d 389 (5th Cir. 2010) ............................................................................. 2

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)............................................................................................ 18

**Statutes**

35 U.S.C. § 284................................................................................................................... 19

**Rules**

Fed. R. Civ. P. 702.............................................................................................................. 19

Fed. R. Evid. 403................................................................................................................. 19

Fed. R. Evid. 702......................................................................................................... 3, 8, 19

Fed. R. Evid. 703................................................................................................................... 3

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

### SUMMARY OF MOTION

Motion Offense hereby moves pursuant to Fed. R. Evid. 702 to exclude certain testimony and opinions of Dropbox's expert witness Robert A. Hutchins regarding damages.  Specifically, Motion Offense moves to exclude Mr. Hutchins' testimony and opinion about what constitutes a reasonable royalty under 35 U.S.C. § 284 in this matter.  Mr. Hutchins admits he lacked sufficient data to form his opinion.  Mr. Hutchins admits that he created the methodology upon which he bases his opinion purely for purposes of this case.  Mr. Hutchins admits that no support for his methodology exists in his personal experience.  Mr. Hutchins admits that no one has ever suggested his methodology might provide reliable results.  Mr. Hutchins' opinions are conclusory, not based on sufficient facts or data, not based on any reliable principles or methods, and will not help the trier of fact to understand the evidence.  They are inadmissible. *See* Fed. R. Evid. 702.

### ARGUMENT AND AUTHORITIES

## I.    LEGAL STANDARDS

An expert witness may provide opinion testimony only if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires the district court to ensure expert testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).  This "gatekeeping" obligation applies to all expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).  Accordingly, "a district court may exclude evidence that

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).

A district court shall consider "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 593). The ultimate inquiry in a Rule 702 determination is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

The reliability prong mandates that expert opinion "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation omitted). "The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Id*. (internal quotation marks and citation omitted). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003); Fed. R. Evid. 702, Advisory Committee Notes to the 2000 amendments ("proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence"). Further, Rule 703 requires an expert to "base [their] opinion on facts and data of a type reasonably relied on by experts in the field." *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996); Fed. R. Evid. 703.

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

## II.    ARGUMENT

The "essential requirement" for a reliable reasonable royalty opinion "is that the ultimate

reasonable royalty award must be based on the incremental value that the patented invention

adds to the end product."  *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys*.,

809 F.3d 1295, 1301 (Fed. Cir. 2015) (internal citations omitted).  Mr. Hutchins opinion lacks

this "essential requirement."

### A.    Hutchins Does Not Base His Reasonable Royalty Opinion on Reliable Quantitative Data Regarding the Incremental Value of the Asserted Patents

Mr. Hutchins repeatedly states that his opinion and proposed testimony are not based on

reliable quantitative data regarding the incremental value the patented invention adds to the end

product:

> "I have not identified any reliable quantitative data that would allow either Motion Offense or Dropbox to isolate the portion of Dropbox's profit that can be credited to what Motion Offense claims is the footprint of the Asserted Patents [ ]."  Exhibit 1 (Expert Report of Robert A. Hutchins), ¶22(a)(i).

> "[T]he profits of the Accused Plans that could be credited to the footprint of the Asserted Patents as alleged by Motion Offense cannot be quantified [ ]."  Exhibit 1, ¶276.

> "Based on the currently available evidence, it is not feasible to derive an economically reliable adjustment factor to apportion the royalty base, regardless of whether the adjustment is made to the royalty base or the rate."  Exhibit 1, ¶292.

> "[T]he Parties would have recognized that they could not reliably isolate the incremental value of the Accused Plans that could be credited to the Asserted Patents, or quantify sales of the Accused Plans that practiced or used the Asserted Patents."  Exhibit 1, ¶294.

> "[T]the Parties would have recognized that they could not isolate the portion of the profits of the Accused Plans that could be credited exclusively to the Asserted Patents."  Exhibit 1, ¶296.

> "My review of Georgia-Pacific Factor #13 did not identify any reliable quantitative data that would allow either Motion Offense or Dropbox to isolate the portion of Dropbox's profit that can be

3

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

credited to what Motion Offense alleges to be the footprint of the Asserted Patents [ ].”  Exhibit 1, ¶324.

“[T]he portion of the profits of the Accused Plans that could be credited to the footprint of the Asserted Patents as alleged by Motion Offense cannot be quantified [ ].”  Exhibit 1, ¶324.

During his deposition, Mr. Hutchins reiterated his position that his opinion is not based on economically reliable quantitative data, acknowledging that in his opinion the parties could not identify the increased value credited to the asserted claims:

> Q. So it is my understanding that you do not intend to offer at trial in this matter an economically reliable adjustment factor to apportion the royalty base. Is that right?
>
> A. Correct. Based on the available evidence, there's nothing that would allow us to estimate what the royalty base, what the adjustment factor to the royalty base should be apportioned to the asserted claims, the footprint of the asserted claims.
>
> Q. So how do you apportion the footprint of the asserted claims?
>
> A. In this instance?
>
> Q. Yes.
>
> A. I think, as I described, that's when the parties recognized that they could not identify the incremental value that was credited to the asserted claims, they could not apportion the royalty base based on available data. That[s] why the fallback position is to look at a lump sum royalty based on the guideline transactions.

Exhibit 2, Hutchins Depo, 136:1-23.

### B.   Hutchins Fails to Establish the Guideline Transactions Are Technically Comparable

Determined to offer a royalty rate even absent an opinion based on reliable quantitative data, Mr. Hutchins retreats to a “fallback position”—a lump sum royalty based on what he categorizes as “guideline transactions.”  Exhibit 2, 136:12-23.  However, an expert must support their testimony with “more than subjective belief or unsupported speculation”—even if their testimony is a “fallback position.”  *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 390

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

(5th Cir. 2009). Subjective belief and unsupported speculation are all that Mr. Hutchins provides.

The "guideline transactions" upon which Mr. Hutchins bases his reasonable royalty opinion are two patent sale agreements—a ███████████████████████████ ██████████████████████████████████ Exhibit 1, ¶311. The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award. *See ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022) (internal citations omitted). Mr. Hutchins and Dropbox fail this burden.

When relying on allegedly comparable licenses, the proponent "must account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). "[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

Mr. Hutchins alleges the ████████████████████ are technically comparable to the asserted patents, based on representations from Dropbox's technical expert, Dr. Gibbons. Exhibit 1, ¶311; Exhibit 2, 62:14-63:5. Here, however, in Mr. Hutchins opinion, technical comparability includes the breadth of the patents:

> Q. In paragraph 126 it says, "...comparable technical subject matter...." Is that what you mean?
>
> A. Yes.
>
> Q. So that doesn't discuss the breadth of the patent, that's the subject matter the patent covers. Is that right?

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

A. It would probably be -- I think it would encompass both.

Q. Why?

A. Well, because the subject matter that the patents cover would -- they might be comparable, but they would also have different scopes of applicability, so that's -- that's why I think it's the -- it goes hand in hand effectively.

Exhibit 2, 123:13-124:4.

A damages expert may—of course—rely upon a technical expert's technical analysis, including the technical comparability of various patents. However, "the reasoning and methodology underlying a proffered expert opinion [must be] scientifically valid and that the reasoning and methodology [must be] applied properly to the facts in issue." *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 592–93). For every conclusion contained in the expert's proposed testimony, the Court must determine if the methodology leading to that conclusion is sound. *Id.* Here, Dr. Gibbons' reasoning and methodology regarding the relative scope of the asserted patents as compared to the ████████████████████████████████████████████ is lacking.

Mr. Hutchins' opinion relies upon Dr. Gibbins' statements that the ████████████████ patents are "significantly broader than the Motion Offense patents" and that "the many limitations of the claims of the Motion Offense patents render them extremely narrow, including in comparison to" the ████████████████ patents. Exhibit 3, Gibbons Report, ¶1959, ¶1963. Mr. Hutchins' opinion then relies on Dr. Shamos' statement that the Asserted Claims contain "about 190" limitations, divided into two arbitrary categories—"interface limitations" and "non-interface limitations." Exhibit 1, ¶30.

Neither Dr. Gibbons nor Dr. Shamos disclose the underlying data or methodology used to determine the relative breadth of the Motion Offense patents with regard to either the ████████ ████████ patents, or what constitutes a limitation in the Asserted Claims, and how the

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

limitations were slotted into "interface" or "non-interface" categories.  Accordingly, it is impossible to replicate their conclusions.

Drs. Gibbons and Shamos may not provide—and Mr. Hutchins may not reasonably rely upon—an opinion, particularly an allegedly empirical one, based on undisclosed data or methodology.  *See* Fed. R. Evid. 702(c); *Moore v. Ashland Chem.,Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This ***requires*** some objective, independent validation of the expert's methodology.") (emphasis added); *Elsholtz v. Taser Int'l, Inc.*, No. 4:05-cv-00287-Y, 2007 U.S. Dist. LEXIS 70825 at *5-10 (E.D. Tex. Sep. 25, 2007) (granting Daubert motion regarding expert report where the expert "fail[ed] to provide any details regarding the methodology he used" to gather the empirical data which formed the basis of his opinions); *see also Aubrey v. Barlin*, No. 1:10-cv-00076-DAE, 2015 U.S. Dist. LEXIS 139961 at *39-40 (E.D. Tex. Oct. 14, 2015) (granting in part Daubert motion to preclude expert opinions with no analysis as "[i]n the total absence of any indicia of methodology, the Court finds that [expert] testimony must be excluded as unreliable.").

Additionally, though Mr. Hutchins' opinion purportedly relies upon the ***relative*** scope of the Asserted Patents to the ██████████ patents/applications, Mr. Hutchins did not request, and neither Dr. Gibbons nor Dr. Shamos provide, any analysis of the number of limitations present in the ██████████ patents/applications:

> Q. You did not attempt to quantify the number of limitations or ask any of the other experts in this matter to quantify the number of limitations present in the ██████ patents. Is that right?
>
> A. I did not.

Exhibit 2, 109:17-22;

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

Q. And how many fewer limitations did the ███████ patents have relative to the asserted patents?

A. That's not something Dr. Gibbons addressed.

Exhibit 2, 106:18-22;

Q. Do you know if Dr. Gibbons identified limitations present in the ██████ patents?

A. That was not referenced or disclosed in his report.

Exhibit 2, 108:11-15;

Q. Did Dr. Gibbons ever explicitly state to you that the ████████ patent has -- patents have significantly few limitations than the asserted patents?

A. His word was broader, broader in scope.

Q. Did he attempt to identify how much broader in scope the ████████ patents were than the asserted patents?

A. I don't believe so.

Exhibit 2, 111:6-15;

Q. Do you know if the ████████ patents contain detailed limitations?

A. I don't know.

Exhibit 2, 113:13-15;

Q. Do you know if there are numerous detailed limitations in the ██████ patents?

A. I think the issue is even if there were detailed limitations in the ██████ patent, they're still broader in scope than the asserted patents.

Q. Is that true for the █████ patents as well?

A. I think generally, yes, that's right.

Exhibit 2, 113:22-114:8.

This is significant, because in an effort to render the ██████████████ purchase agreements ***economically*** comparable, Mr. Hutchins purports to conduct a mathematical

8

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

comparison whereby he discounts the royalty rate based upon the number of "limitations"

present in the Asserted Claims.  *See* Exhibit 1, ¶313.

### C.   Hutchins Fails to Establish the Guideline Transactions Are Economically Comparable

Mr. Hutchins acknowledges that the ███████████ agreements are not

economically comparable.  *See, e.g.*, Exhibit 1, ¶127 ("I acknowledge, however, that there would

likely be economic differences between these two patent purchase agreements and a hypothetical

non-exclusive bare license between the Parties.").  Aside from the alleged technical

comparability, Mr. Hutchins never provides a factual basis to associate the ███████

████████ patent purchase agreements with the hypothetical patent license negotiation at issue

here.  *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)

("there must be a basis in fact to associate the royalty rates used in prior licenses to the particular

hypothetical negotiation at issue in the case.").

Instead, apparently acknowledging the lack of economic comparability, Mr. Hutchins

applies a number of discounts to what he characterizes as the "guideline transactions," including

discounts based on the "number of limitations" discussed above:

> Q. Aren't your limitations relevant to the asserted patents?
>
> A. Yes, as describe in the report, I use the number of limitations as a proxy for trying to estimate what the discount would be on the guideline transactions relative to the asserted patents.

Exhibit 2, 115:16-22.

Mr. Hutchins uses "limitations" as a proxy for patent scope:

> Q. So in your testimony we can supplement or rather replace the word broader in scope with fewer limitations and that would be an accurate simplification?
>
> A. Again, I'm not the technical expert here, but that would be my inference. I think that just the fact it's broader in scope would mean it would have fewer limitations.

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

Exhibit 2, 109:8-16.

These discounts are apparently based on Mr. Hutchins unsupported assumption that a

broader patent is more valuable than a narrower patent:

> Q. Well, why is the breadth of the patent claims relevant to your
> analysis?
>
> A. Well, it's relevant because we are comparing -- we're using the
> guideline transactions, the ██████████ transactions, as
> an indication of value, the value of the asserted patents. And we
> have to take into account the fact that the guideline transactions are
> broader in scope than the asserted patent because of the numerous
> detailed limitations.
>
> Q. So I think implicit in there is that in your opinion a broader
> claim is more valuable than a narrower claim. Is that right?
>
> A. Yeah, I think that's fair.

Exhibit 2, 220:20-221:11;

> Q. So why in your report do you assume that a broad claim is
> better than a narrow claim?
>
> A. Well, I think generally if you're talking about the technology
> that is comparable, then to the extent that a claim has a broader
> footprint, then it's going to have more value than a narrow claim.
> That's just, you know, basic economics.

Exhibit 2, 225:12-20.

Even if Mr. Hutchins is correct, and a broader patent is generally more valuable than a

narrower patent, Mr. Hutchins makes no effort to determine if that generalized proposition

applies to the facts of ***this*** case.  *See*, *e.g.*, *Uniloc*, 632 F.3d at 1317 (requiring a basis in fact to

associate rates the with hypothetical negotiation at issue in this case).

> Q. Do you have any evidence that suggests that Dropbox
> considered the breadth of the patent claims for any of the licenses
> that you reviewed?
>
> A. No.
>
> Q. Did you ask anyone at Dropbox who was responsible for
> acquiring intellectual property rights whether they considered the

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

breadth of claims when doing their intellectual property acquisitions?

A. I think it -- I did not have a conversation with anybody at Dropbox about that issue.

Exhibit 2, 228:23-229:4-11.

Furthermore, Mr. Hutchins—despite his assertion that a broader patent is generally more valuable than a narrower patent—failed to disclose any established or accepted methodology to calculate the relative value of broader or narrower patents in a particular transaction.  Indeed, he testified that in his entire career he has never used the breadth of a patent as measured by its limitations as an input to licensing negotiations:

Q. When you were negotiating or consulting on patent licenses, did you ever look at the—and count up the number of limitations as an element to those negotiations?

A. No.  That would not be within my area of expertise to do something like that.

Q. Did any of your technical experts ever perform that task?

A. I don't recall that ever coming up.

Exhibit 2, 118:4-13.

Mr. Hutchins acknowledges that the "guideline transactions" are not economically comparable, at least until some mechanism for taking into account the "substantial number of limitations" in the Motion Offense patents is applied. *Id*.

Q. Have you ever used the number of limitations as a modifier in something to determine the value of the patent that you were intending to license?

A. No.  Again, I think this is a unique situation where you have a substantial number of limitations that need to be considered and taken into account relative to the guideline transactions.

Exhibit 2, 118:14-22.

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

**D.      Hutchins Bases His Opinion and Testimony on Unreliable Principles and Methods**

In Mr. Hutchins' opinion, the Asserted Patents require a subjective adjustment in order for the guideline transactions to be economically comparable.  To accomplish this subjective adjustment, Mr. Hutchins created a unique methodology, solely for purposes of this litigation:

> Q. So what patents would need this subjective adjustment that you perform in 313?
>
> A. The asserted patents relative to the guideline transactions in this matter.
>
> Q. So is it that the asserted patents are unique and thus need a unique methodology in order to account for this subjective adjustment?
>
> A. I think they are unique given the number of limitations that we've discussed and, again, particularly relative to the guideline transactions. It is a unique situation.

Exhibit 2, 153:12-24;

> Q. So [is] it accurate to say that this is the first and only time you performed this analysis?
>
> A. Yes.

Exhibit 2, 120:11-14.

For any theory or technique an expert employs, a district court must consider "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation."  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 593).  Mr. Hutchins' technique satisfies none of these criteria.

Mr. Hutchins' technique is not generally accepted:

> Q. And you're not aware of any one in any other transaction involving the acquisition or license of the patent that has used this

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

> particular methodology to determine the price for that transaction.
> Is that right?
>
> A. I am not, again, working with the data that we have, the best
> information that we have and trying to make the proper economic
> adjustment, recognizing that the adjustment needs to be made to it.

Exhibit 2, 150, 2-12.

Mr. Hutchins' technique has not been subject to peer review or publication:

> Q. Are you aware of any research that suggests this as a technique?
>
> A. I am not aware of any research. Again, it's based on the
> information we have available, best information we have available.
> These are the factors that we had to work with.
>
> Q. Are you aware of any literature or discussion in the industry
> that suggests that this is a -- that suggests this approach to you?
>
> A. No, I'm not aware of any literature that discusses such an
> approach, [ ].

Exhibit 2, 151:6-18.

Mr. Hutchins' theory has not and cannot be tested, as Mr. Hutchins asserts it is based on

the unique circumstances of this case:

> Q. I said, and you're not aware of anyone in any other transaction
> involving the acquisition of license of a patent that used this
> particular methodology to determine the price for that transaction.
> Is that right?
>
> A. No, I'm not aware of another transaction that had the same set
> of facts and circumstances that we're dealing with here that
> necessitates us coming up with this subjective analysis that is
> necessary in order to make the proper adjustment to account for the
> scope differences between the guideline transactions and the
> asserted patents.

Exhibit 2, 150:17-151:5.

Further, even a cursory analysis reveals Mr. Hutchins' technique's potential error rate is

unacceptable and no standards exist controlling the technique's operation.  Mr. Hutchins briefly

summarizes his technique in the body of his report by stating:

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

One approach the Parties would consider would be to quantify what the interface limitations (117) and non-interface limitations (73) were as a percent of the total limitations (190). This analysis would produce a range for the weighted average value of the guideline transactions before adjusting for ownership differences that the Parties could evaluate as part of the hypothetical negotiation. ███████████████████████████

Exhibit 1, ¶313.



Mr. Hutchins technique creates a "discount %" based on the percentage of "Interface" and "Non-interface" limitations.  Mr. Hutchins then multiplies his previously adjusted royalty value by each of those discount percentages.  He then adds the resulting two numbers and takes their average:

> Q. What do you mean you apply it?
>
> A. So I basically take the weighted range and reduce it by 61.6 percent and do the same thing, reduce it by 38.4 percent, and then come up with an average based on those two calculations.

Exhibit 2, 6-11.

What Mr. Hutchins either fails to realize or ignores, is that the average of any two percentages that add up to 100% will always yield 50%.  Accordingly, Mr. Hutchins' reliance on

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

the average of two percentages adding up to 100% entirely eliminates the relevance of the

number of limitations his technique is supposed to measure.



The same is true if the number of limitations is absurdly low.  For example, if there are

10 limitations split into two categories such that category 1 ("Interface Limitations") has 6

limitations and category 2 ("Non-interface Limitations") has 4 limitations,

Unsurprisingly, this is exactly the result Mr. Hutchins obtains using the figures from

Exhibit 1, ¶313:

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*



No matter the inputs, the output of Mr. Hutchins formula remains the same.  It measures nothing.  It is a phony calculation.

Effectively, Mr. Hutchins' technique simply states that in any situation where one patent is narrower than another, the parties would reduce the value of the comparable license by 50%, without regard to the actual or relative number of limitations the patents contain.  Unsurprisingly, the "Adjusted Value – Average" number that Mr. Hutchins obtains is exactly 50% of the combined number he began with (rounded to the nearest $5,000): ▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆ Mr. Hutchins technique appears to be nothing more than the Nash Bargaining Solution obfuscated with additional steps.  *See, e.g., Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014) (holding an expert may not simply rely on the Nash Bargaining Theorem to derive a 50/50 profit split).[2]

---

[1] It appears there is a typographical error in calculation "7" and "8" on Exhibit 10 to Mr. Hutchins' Expert Report, which incorrectly switches their results.

[2] This is not the only instance where Mr. Hutchins effectively assumes the parties will simply agree to a 50/50 split.  Mr. Hutchins also posits—without support—that the Parties would have agreed to split an adjustment 50/50 to the already reduced ▆▆▆▆▆▆▆▆▆▆ to account for the de minimis values Mr. Hutchins ascribes to several "market-based transactions."  Exhibit 1, ¶¶326-327.  Mr. Hutchins' unsupported speculation is inadmissible.  *See, e.g.*, *Paz*, 555 F.3d at 390 (An expert must support their testimony with "more than subjective belief or unsupported speculation.").

PUBLIC VERSION
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

Mr. Hutchins' technique to account for the reduction in value attributable to the alleged narrowness of the asserted claims is inherently unreliable and not suitable for its claimed purpose.  It is inadmissible under Fed. R. Evid. 702 and 403; *Knight*, 482 F.3d 347, 351 (5th Cir. 2007).

## III.    CONCLUSION

For the foregoing reasons, the Court should exclude Mr. Hutchins' testimony and opinion about what constitutes a reasonable royalty under 35 U.S.C. § 284 in this matter.  Neither Dropbox nor Mr. Hutchins have proven the admissibility of Mr. Hutchins' opinion testimony "by a preponderance of the evidence."  *Fullwood*, 342 F.3d at 412 (5th Cir. 2003).  Mr. Hutchins acknowledges his opinion is not based upon reliable quantitative data sufficient to apportion the value of the Motion Offense patents.

 Mr. Hutchins' "fallback" opinion is conclusory, not based on sufficient facts or data, not based on any reliable principles or methods, and will not help the trier of fact to understand the evidence.  *See* Fed. R. Civ. P. 702.  The "subjective analysis" in which Mr. Hutchins' engages to adjust the guideline transactions is not generally accepted; has not been subjected to peer review and publication; cannot be tested; has a 100% error rate (the inputs have no relation to the outputs); and no standards control the technique's operation. Any one of these myriad issues render Mr. Hutchins' entire opinion unreliable.  *See*, *e.g.*, *Paz*, 555 F.3d 383, 388 (5th Cir. 2009) ("[A]ny step that renders the analysis unreliable . . . renders the expert testimony inadmissible.") (internal citations omitted).  Mr. Hutchins testimony would not be helpful to the jury, and would in fact only serve to confuse.  *See* Fed. R. Evid. 702, 403.

**PUBLIC VERSION**
*HIGHLY CONFIDENTIAL – FILED UNDER SEAL*

Dated:  February 24, 2023

*s/ Derek Dahlgren*
Timothy Devlin (DE Bar No. 4241)
Derek Dahlgren (*pro hac vice*)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*ATTORNEYS FOR* MOTION OFFENSE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Derek Dahlgren*
Derek Dahlgren