*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DROPBOX, INC.,<br><br>*Plaintiff / Counterclaim Defendant,*<br><br>v.<br><br>MOTION OFFENSE, LLC,<br><br>*Defendant / Counterclaim Plaintiff.*<br><br>MOTION OFFENSE, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DROPBOX, INC.,<br><br>*Defendant.* | Civil Action No. 6:20-cv-00251-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL**<br><br><br><br>Civil Action No. 6:21-cv-00758-ADA<br><br>**JURY TRIAL DEMANDED** |

**MOTION OFFENSE, LLC'S MOTION TO EXCLUDE
CERTAIN PORTIONS OF THE EXPERT REPORT AND TESTIMONY
OF MICHAEL IAN SHAMOS REGARDING INVALIDITY**

Dated: March 10, 2023

Timothy Devlin (DE Bar No. 4241)
Derek Dahlgren (*pro hac vice*)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*Attorneys for* MOTION OFFENSE, LLC

1

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

**TABLE OF CONTENTS**

I.     Introduction ................................................................................................................... 1

II.    Legal Standards ............................................................................................................. 1

III.   Argument ....................................................................................................................... 2

    A.     Dr. Shamos' Prior Art "Systems" Are Based on Impermissible Combinations of Different Systems. His Resulting Opinions are Unreliable and Should Be Excluded ................ 2

    B.     The Following "Systems" Are Collections of Materials Untethered and that Do not Refer to Any Single System and are Impermissible ................................................................... 3

        1.    Dropbox 2011 ................................................................................................. 3

        2.    Dropbox 2009 ................................................................................................. 7

        3.    ShareFile ......................................................................................................... 8

        4.    Box .................................................................................................................. 9

        5.    IBackup ......................................................................................................... 11

        6.    Xdrive ........................................................................................................... 12

        7.    Attachmore .................................................................................................... 13

        8.    Google Drive ................................................................................................. 13

        9.    Dropbox 2017 ............................................................................................... 14

IV.    CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
  932 F.3d 1364 (Fed. Cir. 2019) ................................................................................................ 3

*Generac Power Sys. v. Kohler Co.*,
  No. 11-CV-1120-JPS,
  2012 U.S. Dist. LEXIS 165606 (E.D. Wis. Nov. 20, 2012) ...................................................... 3

*IP Innovation L.L.C. v. Red Hat, Inc.*,
  2010 U.S. Dist. LEXIS 145350 (E.D. Tex. Oct. 13, 2010) ........................................................ 2

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ................................................................................................ 2

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
  726 F.2d 724 (Fed. Cir. 1984) ............................................................................................. 2, 3

*Sunoco v. Powder Springs Logistics*,
  Civil Action No. 17-1390-LPS-CJB,
  2020 U.S. Dist. LEXIS 253765 (D. Del. Feb. 6, 2020) ............................................................ 3

**Statutes**

35 U.S.C. § 102 .............................................................................................................................. 1

35 U.S.C. § 103 .............................................................................................................................. 4

**Rules**

Fed. R. Evid. 104 ........................................................................................................................... 2

Fed. R. Evid. 702 ........................................................................................................................... 1

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

**I.   INTRODUCTION**

The Court should preclude certain testimony and opinions of Dropbox's expert witness, Dr. Shamos, regarding invalidity because they are unreliable and likely to confuse the jury.

Dr. Shamos' expert report asserts that various "systems" are prior art under 35 U.S.C. §§ 102(a) and 102(b).  For each "system," Dr. Shamos, relies on hundreds or thousands of different documents and references to purportedly describe the respective "system."  These various collections of materials include documents, videos, and/or other evidence spanning many years, and that relate to multiple distinct systems.  This includes Dropbox's own alleged prior art "systems" that Dropbox itself labels with distinct system names and which its own non-infringement expert, Dr. Gibbons, insisted on referring to as distinct products.  Dr. Shamos makes no effort to tie together the disclosures in these various references, or to attach the references to any single product or system that he alleges was sold, offered for sale, or in public use.  Instead, repeatedly, he downplays the fact that the prior art "system" that he uses for his invalidity analysis is in fact a hodge-podge of multiple distinct systems, asserting that this important fact is simply "not material" to his invalidity analysis.

Dr. Shamos' methodology is inconsistent with the law and his methodology is not the product of reliable scientific methods. His invalidity opinions based on prior art should be excluded for these reasons alone.

**II.   LEGAL STANDARDS**

The standard for permissible expert testimony is set forth in Fed. R. Evid. 702.  A witness may provide expert testimony subject to certain gatekeeping requirements: (1) the witness is qualified; (2) the testimony will help the jury; (3) it has a sufficient factual basis; (4) is a product of reliable principles and methods; and (5) reliably applies those principles and methods to the

1

facts of the case.  Rule 702.  Expert testimony is limited to opinions falling within these bounds.[1]

Admissibility must be established by a preponderance of the evidence.  Rule 104(a).

**III.    ARGUMENT**

    **A.    Dr. Shamos' Prior Art "Systems" Are Based on Impermissible Combinations of Different Systems. His Resulting Opinions are Unreliable and Should Be Excluded**

Prior art is defined by 35 U.S.C. § 102.[2]  *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).  Section 102(a) and (b) refer to a *single* prior art reference, system, or process.  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984).  Other documents can be used to describe the operation of that *single* prior art system.  *IP Innovation L.L.C. v. Red Hat, Inc.,* 2010 U.S. Dist. LEXIS 145350, 14 (E.D. Tex. Oct. 13, 2010) (Radar, Circuit Judge) ("This court sees no error in using multiple references to describe *a single prior art system* for the purpose of showing anticipation"). But combining different systems under Section 102 is improper.  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984).  To qualify as prior art under §102, a *single* system must have *existed*.  *Generac Power Sys. v. Kohler Co.*, No. 11-CV-1120-JPS, 2012 U.S. Dist. LEXIS 165606, at *41 (E.D. Wis. Nov. 20, 2012).  To qualify as §102(b) art, it also must have existed *prior* to the critical date; merely establishing that the system existed during the same year as the critical date is legally insufficient.  *ATEN Int'l Co. v. Uniclass Tech. Co*., 932 F.3d 1364, 1368 (Fed. Cir. 2019).  Whether a system qualifies as prior art under 35 U.S.C. § 102 is a question of law based on underlying facts.  *Sunoco v. Powder Springs Logistics*, Civil Action No. 17-1390-LPS-CJB, 2020

---

[1] Preliminary Draft Proposed Amendments to Federal Rules at 310 (August 2021) (https://www.uscourts.gov/sites/default/files/preliminary_draft_of_proposed_amendments_-_august_2021_0.pdf)(last accessed Feb. 24, 2023).

[2] With the exception of Sections 102(c) and 102(d), which are loss of right provisions.

U.S. Dist. LEXIS 253765, at *5 (D. Del. Feb. 6, 2020) (citing *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1367 (Fed. Cir. 2019)).

When an accused infringer attempts to invalidate a patent claim based on a combination of alleged prior art systems, the accused infringer's argument legally cannot invalidate a patent under §102, and instead the argument necessarily falls under the "non-obvious subject matter" requirements of §103. *See* 35 U.S.C. § 103.

### B. The Following "Systems" Are Collections of Materials Untethered and that Do not Refer to Any Single System and are Impermissible

#### 1. Dropbox 2011

Dr. Shamos asserts that "The Dropbox 2011 system ("Dropbox 2011") was a product known or used by others in this country, on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. ¶ 666.) However, several of the documents, videos, and other evidence Dr. Shamos relies on to describe "Dropbox 2011" are dated after September 2011, including some as late as 2012, including a reference to Dropbox's 2012 source code, as shown in Appendix A. For each of those documents and evidence, Dr. Shamos makes no effort to tie their disclosures to any specific Dropbox version or product that was available on sale, offered for sale, or available to the public in 2011.

Dr. Shamos also relies on patents and patent applications in his analysis of invalidity that allegedly describe "Dropbox 2011," including U.S. Patent No. 8,825,597 ("Houston '597") and U.S. Patent No. 9,049,176 ("Ferdowsi '176").[3] However, Dr. Shamos makes no effort to show that the patents are describing the "Dropbox 2011" system specifically rather than a generic disclosure that may or may not be applicable—which would disqualify any reliance on the patent:

---

[3] Dr. Shamos incorporates by reference materials cited in his expert report and other claim charts

3

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

        a.        **Dropbox 2011-AirDropper**

Dr. Shamos asserts that "The Dropbox 2011-AirDropper system" ("Dropbox-AirDropper") was a product known or used by others in this country, on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. ¶ 702.) Dr. Shamos backed away somewhat at deposition, stating that Dropbox 2011-AirDropper became a unitary product, when it had been "combined in the field" conceding the lack of sales or offers for sale by any party of both systems. (Shamos Rep. ¶ 702; Shamos Dep. Tr. at 23:12-24:3.)

However, the documents Dr. Shamos cites show, at best, that AirDropper was a third-party product that could be used in addition to Dropbox. (*See, e.g.*, DRBX_MoOff_000019626.) Dr. Shamos does not provide any evidence that a user had ever "combined" AirDroper with Dropbox 2011 "in the field" as a single "system," (or what that single system would even be) or otherwise used AirDropper and Dropbox 2011 in a manner recited by the asserted claims.

The fact that AirDropper could be used with Dropbox under certain circumstances does not transform these separate products and services offered by different companies into a single product or "system." By analogy, one can use one's Apple iPhone, Google's Gmail service, a Linksys Wi-Fi hotspot at Starbucks, and the Internet Service Provider that Starbucks uses (say Verizon Fios) to check one's email while waiting in line to get coffee. But this does not make these separate products and services a single "system" (and labelling them "the Starbucks email system" would not change this result).

Indeed, Dr. Shamos does not provide any evidence that any party ever sold or offered for sale a "unitary" Dropbox 2011-AirDropper "product."[4] Instead, the documents he cites show, at

---

[4] Further, Dr. Shamos claims that "the source code made available for inspection in the folder /Dropbox 2011 Code/, which contains desktop, mobile, and server code, accurately reflects ***the product*** that was used, sold, and in public use." (Shamos Rep. ¶ 709.) However, Dr. Shamos fails to identify "the product" to which he refers.

4

best, ███████████████████████████████████████████. (*See, e.g.*, DRBX_MoOff_000056453.)  Indeed, it is likely the documents cited by Dr. Shamos were simply a ███████████████ (DRBX_MoOff_000056453.)

To the extent Dr. Shamos asserts he was informed of AirDropper by Dropbox engineers Jason Terk or Kyle Consalus, ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████.

### b. Dropbox 2011-IFTTT

Dr. Shamos asserts that "The Dropbox 2011-IFTTT system" ("Dropbox-IFTTT") was a product known or used by others in this country, on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. ¶ 723.)  Dr. Shamos also asserts, in his report and at deposition, that Dropbox-IFTTT became a unitary product with functionality from Dropbox 2011 and IFTTT after it was combined in the field. (Shamos Rep. ¶ 723; Shamos Dep. Tr. at 23:12-24:3.)

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████.[5]  Nor does Dr.

---

[5] At least one document Dr. Shamos cites (IFTTT000014) is ███████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

5

Shamos provide any evidence that any party ever sold or offered for sale a "unitary" Dropbox 2011- IFTTT "product." The mere fact that IFTTT *could* be used with Dropbox under certain circumstances does not transform these separate products and services offered by different companies into a single product or "system."

          c.        **Dropbox 2011-Blogtrottr**

Dr. Shamos asserts that "The Dropbox 2011-Blogtrottr system" ("Dropbox-Blogtrottr") was a product known or used by others in this country, on sale in the United States, and/or otherwise available to the public by at least September 2011. Dropbox-Blogtrottr is not a combination reference but was a unitary product." (Shamos Rep. ¶ 711.) However, several documents Dr. Shamos relies on are dated July or August, 2012, as shown in Appendix A.

These cited documents show, at best, that Blogtrottr was a third-party RSS feed reader that possible could have been used alongside Dropbox to view notifications as RSS feeds. Again, Dr. Shamos also does not provide any evidence that any party ever sold or offered for sale a "unitary" Dropbox 2011- Blogtrottr "product." He does not show any use of a particular "Dropbox 2011-Blogtrottr" combination either. Dr. Shamos also states that he relied on Dropbox "engineer testimony" for his opinions. (Shamos Rep. ¶ 715.) However, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Lyons Dep. Tr. at 147:3-4; Consalus Dep. Tr. at 123:19-126:15.) As above, whether Blogtrottr could possibly be used next to Dropbox under certain circumstances does not

---

▮▮▮▮▮▮ Dr. Shamos further states he relied on Dropbox "engineer testimony" for his opinions. (Shamos Rep. ¶ 727.) But a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Consalus Dep. Tr. at 121:20-122:22.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

transform these separate products and services offered by different companies into a single product or "system."

### 2. Dropbox 2009

Dr. Shamos asserts that "The Dropbox 2009 system ("Dropbox 2009") was a product known or used by others in this country, on sale in the United States, and/or otherwise available to the public by at least November 2009." (Shamos Rep. ¶ 627.)

Dr. Shamos does not provide any evidence of any Dropbox "system" or "product" that was sold, offered for sale, or in public use in 2009, and described by the above evidence. Rather, the evidence demonstrates that what Dr. Shamos refers to as a "system" was not a single system at all, but a collection of snapshots of different Dropbox services that existed at different points over a period of approximately three years, between 2009 and 2012. For example, the Dropbox mobile apps for Android and iOS that Dr. Shamos relies on in connection with "Dropbox 2009" were not introduced till late 2009. At deposition, Dr. Shamos acknowledged this fact, but stated that he did not treat the Dropbox 2009 system prior to introduction of the mobile apps distinctly from the system as it existed after the mobile apps were introduced:

> Q. And the Dropbox 2009 system as it existed before the mobile app was introduced, would you consider that to be a separate system than the Dropbox 2009 system as it existed after the mobile app was introduced?
>
> . . .
>
> A: -- yeah. I'm not sure that we both have the same understanding of what "separate system" means. It was -- a major new feature was added, that you could interact with Dropbox through a mobile app that didn't exist before. Now, does that mean they're separate systems, or does that just mean a feature is being added to an existing system.

(Shamos Dep. Tr. at 28:9-30:22.)

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

As a further example of Dr. Shamos's reliance on snapshots of Dropbox, several documents and videos Dr. Shamos cites are dated as late as 2010 or 2012, as shown in Appendix A.

Moreover, Dr. Shamos also relies on at least U.S. Patent No. 8,825,597 ("Houston '597") to support his description of the "Dropbox 2009 system", but he does nothing to show that the disclosures or embodiments from this patent were actually implemented in the "Dropbox 2009 system."

### 3. ShareFile

Dr. Shamos first asserts that "The Citrix ShareFile system ("ShareFile") was used, offered for sale, or sold at least by 2010." (Shamos Rep. ¶ 535.) In his claim charts, Dr. Shamos purports to rely on at least three alternative publication dates for ShareFile. For example, he asserts that "ShareFile was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. '052 Sharefile.) He also asserts that "ShareFile was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least October 2009." (Shamos Rep. '052 Dropbox 2011.) As a third example, he asserts that "ShareFile was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2010." (Shamos Rep. '548 Dropbox 2011.) To confuse the issue further, Dr. Shamos relies on a capture of the sharefile.com website dated July 16, 2011 for at least some of his opinions. (Shamos Rep. '158 ShareFile, citing https://web.archive.org/web/20110716051250/http:/www.sharefile.com/ ("ShareFile").)

However, Dr. Shamos does not identify any specific ShareFile "system" that included all of the teachings from the various documents and other evidence he cites. Indeed, at deposition, Dr. Shamos admitted that what he describes as ShareFile may have changed between 2009 and

2011, but he did not conduct any investigation into what exactly may have changed during the two-year timeframe. Instead, he merely dismissed the possibility as "not material":

> Q. So it's your opinion that the ShareFile product that existed by at least October 2009 is the same as that that existed by at least September 25 2011.
>
> A. I don't think there were material changes to the ShareFile product during that time. There must have been changes, but they're not material. It's a file sharing system. It has certain features, and those features are shown in the claim charts.

(Shamos Dep. Tr. at 88:22-89:6.)

### 4. Box

Dr. Shamos first asserts that "[t]he Box system was used, offered for sale, or sold at least by 2009." (Shamos Rep. ¶ 508.) In his claim charts, Dr. Shamos asserts that "Box was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. '052 Box.) Alternatively, he asserts that "Box was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2010." (Shamos Rep. '548 Dropbox 2011.)

At deposition, Dr. Shamos testified that his positions were not inconsistent because "2009 is at least by 2011." (Shamos Dep. Tr. at 86:18.) However, in his claim charts, Dr. Shamos purports to rely on several documents with publication dates after September 2011, including after the September 21, 2012 effective filing date for the asserted claims, as shown in Appendix A.

Moreover, in at least one instance, Dr. Shamos appears to rely on features of Box that were not implemented before the effective filing date but were instead considered internally at Box for inclusion in a future version. For example, for the limitation "where the storage at the second node does not store the at least one file when the creation of the representation of the at least one folder is caused" in claim 3 of the '158 patent, ▓▓▓▓▓▓▓▓▓▓

9

███████████████████████████████████████ (Shamos Rep. '158 Box at 722.)

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████ it is a *different* version of the system as compared to what is described in other evidence upon which Dr. Shamos relies. For example, the videos Dr. Shamos cites elsewhere in the claim chart appear to describe the operation of version 1.2.20. (*See* https://www.youtube.com/watch?v=8-TbdUAwPjU, at 1:09.)

It is undisputed that versions 3.x or 3.4 were not introduced (and were therefore not sold, offered for sale, or in public use) till at least May, 2013, after the effective filing date of the asserted claims.[6]

At deposition, Dr. Shamos was unable to identify any specific Box "system" or version that included all of the teachings of the various documents/evidence he cites.

> Q. I believe we covered this, but I just want to be clear. You can't point to a specific version of the Box system that you're referencing as the Box prior art system; is that right?
>
> . . .
>
> I don't know how Box did its versioning, whether it did versioning. No, I can't point you to a specific, you know, Version 4 3.0.322, no.

(Shamos Dep. Tr. at 62:21-63:4.)

---

[6] *See, e.g.,* https://www.macupdate.com/app/mac/45174/box-sync; https://box-sync.updatestar.com/en/technical/3.3.51.0; https://box-sync.updatestar.com/en/technical/3.4.25.0; https://www.theverge.com/2012/4/24/2954960/google-drive-dropbox-skydrive-sugarsync-cloud-storage-competition ("Box Sync isn't yet available for consumers")

Indeed, Dr. Shamos was unable to recall if the Box prior art "system" he relies on even included a desktop client.  (*Id.* at 62:16-18.)

### 5.    IBackup

Dr. Shamos first asserts that "By at least February 2002, the IBackup system had been released."  (Shamos Rep. ¶ 330.)  However, in his claim charts, Dr. Shamos asserts that "IBackup was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2011."  (Shamos Rep. '052 IBackup.)  Dr. Shamos does not identify any specific IBackup version or "system" that was sold, offered for sale, or in public use during this nine-year timeframe.  Indeed, ▌

▌.  (*E.g.*, IDrive000003; IDrive000017; IDrive000279.)

▌

▌.  (*See, e.g.*, Shamos Rep. '158 IBackup at 15-25.)

However, ▌

▌ Dr. Shamos appears to rely on a

▌

▌."  (IDrive000418; *see* July 7, 2022 declaration of Raghu Kulkarni.)  ▌

▌

▌

▌

| ▌ |
|---|
| ▌ |
| ▌ |
| ▌ |
| ▌ |

11

Dr. Shamos also relies on several documents describing the IDrive desktop application between 2005 and 2011 for certain limitations of each asserted claim. For example, Dr. Shamos asserts that the IDrive desktop and mobile applications meet the "cause, utilizing particular code configured to be stored on a storage at the second node and further configured to cooperate with a file explorer interface, creation of a representation of the at least one folder in a location among one or more folders on the file explorer interface, where the storage at the second node does not store the at least one file when the creation of the representation of the at least one folder is caused" limitation in claim 3 of the '158 patent. (Shamos Rep. '158 IBackup at 232-36.)

However, Dr. Shamos ███████████████████████████████████████████████████████████████████████████████████████████████████ Indeed, Dr. Shamos does not provide any evidence that anyone used these disparate features of IBackup or IDrive together as a single prior art "system" at any time prior to the effective filing date.

      6.    **Xdrive**

Dr. Shamos first asserts that "On May 12, 2000, O'Brien et al. of Xdrive Technologies filed an application which was published on September 19, 2002 as U.S. Patent Application Publication 2002/0133561, entitled "Shared Internet Storage Resource, User Interface System, and Method ("O'Brien"). . . . In January 2000 the Xdrive system, including Xdrive Plus and Xdrive Workgroup, was released." (Shamos Rep. ¶ 265.) However, Dr. Shamos does not tie any embodiments or disclosures of O'Brien to any feature that was actually implemented in the "Xdrive system" released in January 2000. Dr. Shamos also fails to provide any evidence at all suggesting that O'Brien and Xdrive were ever combined into a single "system." Moreover, the documents Dr. Shamos relies on to describe the Xdrive system are dated around mid-late 2003, as shown in Appendix A.

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

Dr. Shamos does not explain how, if at all, the features of the Xdrive "system" in those cited documents correspond to the Xdrive "system" released in January 2000 or described in O'Brien. Moreover, Dr. Shamos does not provide any evidence that features of the Xdrive "system" he relies on were in public use at any time prior to the effective filing date.

### 7.     **Attachmore**

Dr. Shamos first asserts that "Attachmore was a system in public use and/or on sale in the United States by at least July 2007." (Shamos Rep. ¶ 457.) In his claim charts, Dr. Shamos further asserts that "Attachmore was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. '052 Attachmore.)

However, several of the documents Dr. Shamos relies on to describe the Attachmore "system" are dated June, 2012, as shown in Appendix A.

Another document that Dr. Shamos relies on, ATT_003_1_00000891, does not appear to be a document produced by Dropbox during fact discovery. A document Bates-numbered ATTACHMORE_000001513 appears to include a similar image in black & white. However, Dr. Shamos does not provide any evidence that either reflects any features of any version of Attachmore that was ever sold or in public use. Instead, the document appears to be, at best, a mockup of a feature Attachmore may have internally considered including in their product. There is no evidence that the feature was *ever* released to the public.

### 8.     **Google Drive**

Dr. Shamos asserts that "Google Drive was used, offered for sale, or sold" by 2012. (Shamos Rep. ¶ 582.) In his claim charts, Dr. Shamos further asserts that "Google Drive was a product known, used by others, or on sale in the United States, and/or otherwise available to the public by at least September 2011." (Shamos Rep. '158 Google Drive.) However, the

documents and videos Dr. Shamos relies on in his claim charts that purport to describe the operation of the Google Drive "system" appear to have publication dates from various points throughout 2012.  Dr. Shamos does not identify any specific prior art "system" that these documents or videos all correspond to, either in his report or claim charts.  Nor does Dr. Shamos provide evidence that any Google Drive "system" was ever sold or offered for sale prior to the critical date of the asserted patents.  Therefore, Google Drive is, at best, a § 102(a) reference.

### 9. Dropbox 2017

Dr. Shamos asserts that "Dropbox 2017 was a product known or used by others in this country, on sale in the United States, and/or otherwise available to the public by at least 2017." (Shamos Rep. ¶ 729.)  In support of this assertion, Dr. Shamos cites "Dropbox 2017 source code." (*See, e.g.*, *id.* ¶ 734.)  For his opinions regarding how "Dropbox 2017" includes the limitations of the asserted claims, Dr. Shamos merely reproduces screenshots from Motion Offense's infringement contentions.

However, Dr. Shamos does not provide any evidence that the source code he cites corresponds to or describes the features accused by Motion Offense.  Indeed, Dr. Shamos does not elaborate on why he selected the specific source code files he did, or otherwise make any showing that the cited code is related to the same "Dropbox 2017" system for which he reproduces Motion Offense's screenshots.  For example, Dr. Shamos does not identify any specific version of Dropbox that was sold, offered for sale, or in public use as of 2017.

## IV.     CONCLUSION

For the foregoing reasons, the Court exclude Dr. Shamos's opinions regarding the alleged prior art systems and preclude any testimony relating to the same.

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

Dated:  March 10, 2023

*s// Derek Dahlgren*
Timothy Devlin (DE Bar No. 4241)
Derek Dahlgren (*pro hac vice*)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*ATTORNEYS FOR MOTION OFFENSE, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Derek Dahlgren*
Derek Dahlgren
