*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| DROPBOX, INC.,<br><br>*Plaintiff / Counterclaim Defendant,*<br><br>v.<br><br>MOTION OFFENSE, LLC,<br><br>*Defendant / Counterclaim Plaintiff.* | **Civil Action No. 6:20-cv-00251-ADA**<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |
| MOTION OFFENSE, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DROPBOX, INC.,<br><br>*Defendant.* | **Civil Action No. 6:21-cv-00758-ADA**<br><br>**JURY TRIAL DEMANDED** |

**MOTION OFFENSE, LLC'S MOTION TO EXCLUDE**
**CERTAIN PORTIONS OF THE EXPERT REPORT**
**AND TESTIMONY OF PHILLIP GIBBONS**

Dated: March 10, 2023

Timothy Devlin (*pro hac vice*)
Derek Dahlgren (*pro hac vice*)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*Attorneys for* MOTION OFFENSE, LLC

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Legal Standards ..... 1

III. ARGUMENT ..... 2

A. Dr. Gibbons Impermissibly Narrowed the Scope of Multiple Claim Terms Through His Own Constructions and All Opinions Based on Those Narrow Constructions Should Be Excluded ..... 2

B. Dr. Gibbons' Opinions and Testimony Regarding Non-Infringement Based on Internal Testing Should Be Excluded as Legally Erroneous ..... 6

C. Dr. Gibbons' Opinions Regarding Alleged Non-Infringing Alternatives Lack a Technical Basis and are Speculative and Unreliable ..... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
932 F.3d 1364 (Fed. Cir. 2019)........ 2

*Bauer & Cie v. O'Donnell*,
229 U.S. 1 (1913)........ 8

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
424 F.3d 1168 (Fed. Cir. 2005)........ 2

*Daubert v. Merrill Dow Pharm., Inc.*,
509 U.S. 579 (1993)........ 1

*Droplets, Inc. v. Overstock.com, Inc.*, Case
2015 U.S. Dist. LEXIS 189123 (Jan. 9, 2015 E.D. Tex.)........ 9

*Elbit Sys. Land v. Hughes Network Sys., LLC*,
2017 U.S. Dist. LEXIS 94495 (E.D. Tex. June 20, 2017)........ 10

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
705 F.3d 518 (5th Cir. 2013)........ 2

*GTX Corp. v. Kofax Image Prods. Inc.*,
571 F. Supp. 2d 742 (E.D. Tex. 2008)........ 1

*NTP, Inc., v. Research In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005)........ 8

*Persinger v. Norfolk & W. Ry. Co.*,
920 F.2d 1185 (4th Cir. 1990)........ 3

*Proxense, LLC v. Samsung Elec. Co., Ltd. et al*,
WDTX-6-21-cv-00210, Dkt. 161 (W.D. Tex. Jan. 12, 2023)........ 10

*Radware, Ltd. v. F5 Networks, Inc.*,
No. 13-cv-02024-RMW,
2016 U.S. Dist. LEXIS 18010 (N.D. Cal. Feb. 13, 2016)........ 8

*Robroy Indus. Tex., LLC v. Thomas & Betts Corp.*,
No. 2:15-CV-512-WCB (E.D. Tex. Apr. 10, 2017)........ 1

*Roche Prods., Inc. v. Bolar Pharm. Co.*,
733 F.2d 858 (Fed. Cir. 1984)........ 8

*Southwall Tech., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995)........ 3

*Tasch, Inc. v. Sabine Offshore Serv., Inc.*,
1999 U.S. Dist. LEXIS 12368 (E.D. La. Aug. 4, 1999)........ 1, 3

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*,
No. 4:19-CV-03113,
2021 U.S. Dist. LEXIS 240688 (S.D. Tex. Dec. 16, 2021)........ 2

**Statutes**

35 U.S.C. §271 .......... 7

**Rules**

Fed. R. Evid. 104 .......... 1

Fed. R. Evid. 403 .......... 10

Fed. R. Evid. 702 .......... 1, 8, 10

## I. INTRODUCTION

The Court should preclude certain testimony and opinions of Dropbox's expert witness, Dr. Gibbons regarding claim construction, invalidity and damages because they are improper, unreliable and would cause substantial jury confusion.

## II. ARGUMENT

### A. Legal Standards

The standard for permissible expert testimony is set forth in Fed. R. Evid. 702. A witness may provide expert testimony subject to certain gatekeeping requirements: (1) the witness is qualified; (2) the testimony will help the jury; (3) it has a sufficient factual basis; (4) is a product of reliable principles and methods; and (5) reliably applies those principles and methods to the facts of the case. Rule 702. Expert testimony is limited to opinions falling within these bounds. Admissibility must be established by a preponderance of the evidence. Rule 104(a).

Rule 702's requirement of "knowledge" guards against the admission of subjective or speculative opinions, which should not be heard by the trier of fact. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The expert witness must bring to the jury more than the lawyers can offer in argument. *Tasch, Inc. v. Sabine Offshore Serv., Inc.*, 1999 U.S. Dist. LEXIS 12368, at *7 (E.D. La. Aug. 4, 1999) (J. Sear); *see also GTX Corp. v. Kofax Image Prods. Inc.*, 571 F. Supp. 2d 742, 750 (E.D. Tex. 2008) (finding an expert's "conclusory" statements insufficient to establish a triable issue of fact). Expert testimony on matters which a jury is capable of understanding and deciding without the expert's help should be excluded.

Expert testimony that does nothing more than "mirror" testimony offered by fact witnesses should be excluded. *Robroy Indus. Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB (E.D. Tex. Apr. 10, 2017) (Bryson, J.) ("[A]n expert witness may not simply summarize the out-of-court statements of others as his testimony. . . . An expert who parrots an out-of-court statement

is not giving expert testimony; he is a ventriloquist's dummy."); *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 4:19-CV-03113, 2021 U.S. Dist. LEXIS 240688, at *3-4 (S.D. Tex. Dec. 16, 2021). "Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 523-524 (5th Cir. 2013) (internal citations omitted).

## III. ARGUMENT

### A. Dr. Gibbons Impermissibly Narrowed the Scope of Multiple Claim Terms Through His Own Constructions and All Opinions Based on Those Narrow Constructions Should Be Excluded

Dr. Gibbons' testimony and opinions related to claim construction are improper, unreliable, and would cause substantial confusion. The claims are governed by their plain and ordinary meaning. Dropbox argued one term—particular code—was indefinite. (DI 45; DI 55.) This Court gave it its plain and ordinary meaning. (DI 90; *see also* DI 55; DI 54.) Dropbox also argued two terms from the '215 patent were indefinite. (Ex. 2; Ex. 3.) But it agreed to plain and ordinary meaning before claim construction briefing. (Ex. 2; Ex. 3; DI 113.) That meaning controls.

Dr. Gibbons nonetheless narrowly construed the claims to support his noninfringement opinions. That was wrong. *ATEN Int'l Co. v. Uniclass Tech. Co.,* 932 F.3d 1364, 1370 (Fed. Cir. 2019)*CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). Dr. Gibbons' flawed constructions will cause significant confusion for the jury.

Dr. Gibbons purports to apply the plain and ordinary meaning of the claims in his expert report on non-infringement. (Ex. 1, ¶122; Ex. 4, 42:22-24.) Dr. Gibbons also claims he and Dr. Shamos, Dropbox's expert for invalidity, both used the plain and ordinary meaning. (Ex. 4, 85:5-7.) He also noted the number of disagreements he had with Dr. Akl's opinions:

> Q. Did you apply the same meaning for the claims as Dr. Akl?

> . . .
>
> A: I disagreed with Dr. Akl's opinions on a number of the claim limitations and claims. That's the bulk of my report really, all the disagreements.

(Ex. 4, 44:16-23.) But Dr. Shamos confirmed he applied Motion Offense's interpretation:

> Q. So if I understand correctly, you applied the same interpretation as Motion Offense did to the claims in your analysis of invalidity in your expert report; is that right?
>
> A. Yes.

(Ex. 5, 82:20-24.) In sum, Dropbox has different experts for invalidity and noninfringement applying different claim constructions. That is contrary to black letter law. *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Patent claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.")

First, claim construction issues are to be decided by the court. It is thus improper for an expert witness to testify before the jury regarding claim construction. "Expert testimony on matters which a jury is capable of understanding and deciding without the expert's help should be excluded." *Tasch*, 1999 U.S. Dist. LEXIS 12368, at *6 (E.D. La. Aug. 4, 1999); *see also Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) ("Rule 702 excludes expert testimony on matters within the common knowledge of jurors.").

Although Dr. Gibbons purported to apply the plain and ordinary meaning to the claim terms at deposition, in forming his opinions on Dropbox's purported non-infringement, Dr. Gibbons impermissibly construes multiple claim terms and phrases narrowly to fit his own non-infringement opinions. These can be grouped into a few categories: "direct causation"; "external node"; "particular code/representation"; "hypertext markup language"; and "sync".

<u>"Direct causation":</u>

Dr. Gibbons construes the "***cause***, [], ***display***" terms (e.g., '158 patent, claim 3) narrowly to limit the claims to ***directly*** causing display. (Gibbons Rep. ¶279; *see also* ¶¶252, 261, 263 & 408.) This is improper. In paragraph 279, Dr. Gibbons purports to apply the doctrine of claim differentiation. (*See also* Gibbons Rep. ¶ 40.) However, Dr. Gibbons does not explain how the doctrine of claim differentiation provides a basis to deviate from the plain and ordinary meaning of "cause."[1] Similarly, Dr. Gibbons construes "[code] configured to ***cooperate*** with a file explorer interface" (e.g., '158 patent, claim 3) narrowly to limit the claim to ***direct*** cooperation and exclude any intermediary such as APIs. (Gibbons Rep. ¶¶405-07.) Dr. Gibbons again provides no basis to deviate from the plain and ordinary meaning of "cooperate with."

<u>"External node":</u>

Dr. Gibbons construes several limitations of the asserted claims as requiring an "external messaging node" that "receives information related to folder sharing from one node over network in a sequential process (e.g., folder information, recipient email)" or "receives information related to a file request in a sequential process (e.g., file request information, date/time, recipient information)." (Gibbons Rep. ¶¶ 165, 175.) Dr. Gibbons does not explain his use of the phrase "sequential process" or its relevance to the claims and instead construes the claims narrowly to seek to avoid infringement.

<u>"Particular code/Representation":</u>

Dr. Gibbons repeatedly construes the phrase "representation" to refer to "icon[s] and/or text." (Gibbons Rep. ¶¶ 400-402, 397, 546, 877, 894, 1511, 1522, 1523.) However, his

[1] Dr. Gibbons' opinions are flawed for another reason. Dr. Gibbons opines in paragraph 279 that "the applicant understood the difference between sending ***instructions*** to cause display and to 'cause . . .display.'" However, the word "instructions" appears nowhere in claim 17. Dr. Gibbons therefore appears to construe the phrase "first communication" in claim 17 as "instructions," without justification.

purported basis for adopting such a construction (*Id.* ¶ 399 (""Representation" as recited in claim 3 refers to something that is "create[ed]" on and "display[ed]" in a "file explorer interface."")) is itself baseless, and he does not justify his departure from the plain and ordinary meaning of the phrase.

Dr. Gibbons also narrows the phrase "file explorer interface" to mean an interface that "allows a user to browse or see all of the user's files in the directory." (Gibbon Rep. ¶ 416.) However, the plain and ordinary meaning of a "file explorer interface" is not limited in this manner, and Dr. Gibbons does not provide any justification for his construction.

Dr. Gibbons also construes the phrase "***cause***, utilizing particular code configured to be stored on a storage at the second node and further configured to cooperate with a file explorer interface, ***creation of*** a representation of the at least one folder in a location among one or more folders on the file explorer interface" to require that the "particular code" "cooperate with a file explorer interface" ***to create*** "a representation of the at least one folder." (Gibbons Rep. ¶¶ 404, 406, 409.) Dr. Gibbons is wrong, as the plain language of the claim requires only that the "particular code" "cooperate with a file explorer interface" ***and create*** "a representation of the at least one folder." Dr. Gibbons does not provide any justification for deviating from the plain language of the claim in this manner.

"Hypertext markup language":

Dr. Gibbons construes the phrase "hypertext markup language equipped code" repeatedly to refer to "both some HTML code and some other code," (Gibbons Rep. ¶ 143), "code that is equipped with HTML," (*id.* ¶ 270), and code that excludes any "features . . . that are not present in HTML," including a "dropdown option." (*Id.* ¶¶ 254-55.) While Dr. Gibbons purports to apply the plain and ordinary meaning of the phrase and cites the specification, (*see id.* ¶ 271), Dr. Gibbons does not provide any basis for departing from the plain and ordinary meaning in light of

the specification, which may include "HTML, ECMAScript, and/or byte code for presenting one or more UI elements." (*See id.* ¶ 271, citing '158 patent at 12:5-9).

Moreover, Dr. Gibbons fails entirely to address the distinction between the claims of the '158 patent, which recite "hypertext markup language equipped code" and those of the '215 patent, which recite "hypertext markup language equipped ***data***." Instead, Dr. Gibbons appears to equate the two phrases, without explanation. (Gibbons Rep. ¶¶ 1404, 1584.)

"Metadata sync":

Dr. Gibbons construes the phrase "synchronized" to require the pre-existence of local metadata on the client. (Gibbons Rep. ¶¶ 398, 1526-27.) Dr. Gibbons therefore opines that "synchronizing" metadata excludes newly creating metadata or receiving metadata. This is contrary to the plain and ordinary meaning of "synchronize," which when viewed in the context of the claim, contemplates creating a representation of a new folder at the client ***based on the synchronization***. (*See also, e.g.*, '215 patent cl. 9.) Dr. Gibbons does not provide any explanation for his narrow construction that reads out other claims of the '215 patent.

### B. Dr. Gibbons' Opinions and Testimony Regarding Non-Infringement Based on Internal Testing Should Be Excluded as Legally Erroneous

During his deposition on February 9, 2023, Dr. Gibbons provided erroneous testimony that Dropbox's use of its own infringing products does not constitute patent infringement:

> Q. Excellent. If I could direct you to [the] exhibit, and there is a sentence talking [REDACTED].
>
> A. Are you referring to the sentence "[REDACTED]?
>
> Q. Yes.
>
> A. Okay.
>
> Q. Is the [REDACTED] something you considered in your infringement analysis when you said that Dropbox itself doesn't infringe?
>
> MS. HERRIOT: Objection. Form.

> THE WITNESS: A person of ordinary skill in the art would not view a [REDACTED] as being evidence of employee use.
>
> . . .
>
> Q. Is it your understanding that [REDACTED]s that are referred to in this exhibit do not qualify as acts of infringement?
>
> MS. HERRIOT: Objection. Form.
>
> THE WITNESS: [REDACTED] would not be considered by a POSITA to be internal use.
>
> BY MR. DAHLGREN:
>
> Q. I just want to make sure I understand. You're saying that the randomized test runs would not be considered internal use by Dropbox?
>
> A. I'm saying –
>
> MS. HERRIOT: Objection. Form.
>
> THE WITNESS: I'm saying a POSITA would not view [REDACTED] to be a use of the product by Dropbox employees. They're not gaining anything from it personally. They're just testing it out. Every product everywhere gets tested out, hopefully, before it gets released. And the big companies do it more than the others, more intensely than the others.

Gibbons Depo 2 at 130:10-132:19.

Dr. Gibbons' testimony flies in the face of the basest definition of patent infringement as set forth by 35 U.S.C. §271(a): "whoever without authority . . . uses . . .any patented invention, within the United States . . . infringes the patent." Dr. Gibbons does not dispute that Dropbox ***uses*** its infringing software by running [REDACTED] per night. Rather, Dr. Gibbons attempts to add nonexistent restraints as to what constitutes patent infringement, such as requiring use "by Dropbox employees" or the requirement that Dropbox employees "gain[] anything from [the testing] personally." Neither of these restraints appear in 35 U.S.C. §271(a). Further, the fact that "big companies do it more than the others" has nothing to do with any infringing use by Dropbox. As the statute states, any "use" of a patent invention, such as that of Dropbox's software, infringes the patent. Therefore, ***every*** use of Dropbox's software infringes Motion Offense's patents, even those uses occurring during overnight testing.

*See, e.g., NTP, Inc., v. Research In Motion, Ltd.*, 418 F.3d 1282, 1316-17 (Fed. Cir. 2005) (stating "[t]he few court decisions that address the meaning of 'use' have consistently followed the Supreme Court's lead in giving the term a broad interpretation," and citing *Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 863 (Fed. Cir. 1984), *superseded-in-part by* 35 U.S.C. § 271(e), for the proposition that "***testing is a 'use'***" as defined by the statute.) (emphasis added); *see also Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 863 (Fed. Cir. 1984); *see also Bauer & Cie v. O'Donnell*, 229 U.S. 1, 10-11 (1913) (the term "use," as used in a predecessor to title 35, is a "comprehensive term and embraces within its meaning the right to put into service any given invention."). Dr. Gibbons' testimony is based on incorrect legal principles and methodology and should be excluded from trial. *See* Fed. R. Evid. 702.

### C. Dr. Gibbons' Opinions Regarding Alleged Non-Infringing Alternatives Lack a Technical Basis and are Speculative and Unreliable

Dr. Gibbons purports to offer an expert opinion regarding multiple alleged non-infringing alternatives. As an initial matter, nothing in Dr. Gibbons' scientific, technical, or specialized knowledge has prepared him to provide an expert opinion regarding the commercial acceptability of any alleged non-infringing alternatives. Indeed, Dr. Gibbons did not conduct any analysis of commercial success at all and appears to have no independent opinion regarding commercial acceptability. Instead, Dr. Gibbons cites Dr. Shamos' report. *See*, *e.g.*, Gibbons, ¶¶1953-1955.

While one expert may rely upon another, Dr. Gibbons' conclusory citations to Shamos do not support any particular conclusion regarding whether any individual alleged non-infringing alternative was commercially acceptable. They do nothing to assist the jury. *See*, *e.g.*, *Radware, Ltd. v. F5 Networks, Inc.*, No. 13-cv-02024-RMW, 2016 U.S. Dist. LEXIS 18010, at *13-14 (N.D. Cal. Feb. 13, 2016),

Further, nothing for which Dr. Gibbons' cites Shamos' report supports a conclusion that any specific non-infringing alternative was commercially successful. Dr. Gibbons' cites Shamos' report to support the general proposition that Dropbox as a company was commercially successful (Gibbons, ¶1953); that Google, Citrix, and Box were commercially successful (Gibbons, ¶1954); and that Shamos identified a number of different products that provided multiple different ways to share and request files (Gibbons, ¶1955). Dr. Gibbons' bare citation, without any analysis whatsoever, contributes nothing and does not assist the jury. *See*, *e.g.*, *Radware* at *13-14.

Additionally, Dr. Gibbons wholly fails to provide a technical basis for the position that any of the alleged alternatives are non-infringing. Instead, Dr. Gibbons' opinion appears to be that the alternatives existed and they have not yet been accused of infringement. Gibbons, ¶¶1937-1955. For example, Dr. Gibbons states that there are "multiple ways to use Dropbox to share and request files that are not accused by Dr. Akl of infringing." Gibbons, ¶1937. Dr. Gibbons provides little detail and less analysis as to how these "multiple ways" that are "not accused by Dr. Akl of infringing" meet the non-infringing alternative standard. Instead, Dr. Gibbons simply states that because these additional methods are not expressly accused, they constitute non-infringing alternatives. *Id.* Not so.

Whether or not an alleged alternative has been accused of infringement is insufficient standing alone to establish a non-infringing alternative. *Droplets, Inc. v. Overstock.com, Inc.*, Case 2:11-cv-00401-JRG-RSP, Dkt. 347, 2015 U.S. Dist. LEXIS 189123, *7 (Jan. 9, 2015 E.D. Tex.) The potential prejudice to Motion Offense "is significant because Defendants' experts, if limited to their reports at trial, would simply present their conclusions that the [alleged alternatives] are non-infringing alternatives, largely because the products have not been accused of infringement." *Elbit Sys. Land v. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS-RSP,

2017 U.S. Dist. LEXIS 94495, at *30-35 (E.D. Tex. June 20, 2017) (excluding testimony); *Proxense, LLC v. Samsung Elec. Co., Ltd. et al*, WDTX-6-21-cv-00210, Dkt. 161 (W.D. Tex. Jan. 12, 2023).

Dr. Gibbons is not qualified to offer an opinion on the commercial acceptability of any alleged non-infringing alternative, and did not provide a technical basis for his opinion that the alleged alternatives are non-infringing, relying instead on the fact that they have not yet been accused of infringement. Dr. Gibbons' testimony is more prejudicial than probative, not helpful to the jury and should be excluded. *See* Fed. R. Evid. 403, 702.

## CONCLUSION

The Court should exclude the foregoing testimony and opinions of Dr. Gibbons.

Dated: March 10, 2023

*s/* Derek Dahlgren
Timothy Devlin
Derek Dahlgren (*pro hac vice*)
Alex Chan (Texas Bar No. 24108051)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.,
Wilmington, DE 19806
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com
achan@devlinlawfirm.com

*ATTORNEYS FOR* MOTION OFFENSE, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2023 I caused the foregoing to be served via electronical mail to all counsel of record

*/s/ Derek Dahlgren*
Derek Dahlgren