IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DROPBOX, INC., <br>     *Plaintiff/Counter-Defendant,* <br><br> -v- <br><br> MOTION OFFENSE, LLC, <br>     *Defendant/Counter-Plaintiff.* | 6:20-CV-00251-ADA |

## MEMORANDUM IN SUPPORT OF CLAIM CONSTRUCTION ORDER

Before the Court are the parties' claim construction briefs. Counter-Defendant Dropbox, Inc. ("Dropbox") submitted its opening Claim Construction Brief on November 4, 2020, and its Reply Claim Construction Brief on December 11, 2020. (ECF Nos. 54, 60, respectively). Counter-Plaintiff Motion Offense, LLC, ("Motion Offense") submitted its response on November 25, 2020. ECF No. 57. Motion Offense submitted its opening Claim Construction Brief on November 4, 2020, and its Reply Claim Construction Brief on December 11, 2020. (ECF Nos. 55, 59, respectively). Dropbox submitted its response on November 25, 2020. ECF No. 58. The Court provided its preliminary constructions on January 13, 2021. The Parties notified the Court that they would forgo oral arguments and stand on their briefs. ECF No. 67. The Court provides this memorandum in support of its Claim Construction Order issued on June 2, 2021. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## TABLE OF CONTENTS

I. BACKGROUND ................................................................................................................. 3

II. LEGAL PRINCIPLES ....................................................................................................... 3

    A. Claim Construction.................................................................................................. 3

    B. Departing from the Ordinary Meaning of a Claim Term ....................................... 6

    C. Indefiniteness........................................................................................................... 7

III. CONSTRUCTION OF DISPUTED TERM ..................................................................... 7

        a. The Parties' Positions ......................................................................................... 9
        b. The Court's Analysis ........................................................................................ 10

IV. CONCLUSION.................................................................................................................. 13

I.      BACKGROUND

Motion Offense asserts five patents in this litigation: U.S. Patent Nos. 10,013,158 (the "'158 Patent"), 10,021,052 (the "'052 Patent"), 10,303,353 (the "'353 Patent"), 10,587,548 (the "'548 Patent"), and 10,613,737 (the "'737 Patent"). All five patents are related and have the same inventor, Robert Paul Morris. The disputed term, "particular code," appears in asserted claims of the '158, '353, and '737 Patents.

II.     LEGAL PRINCIPLES

A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (quotation marks omitted) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") *cert. granted, judgment vacated,* 135 S. Ct. 1846 (2015).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*.

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But,

"'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the

particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

### B. Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[1] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

---

[1] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C. Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

### III. CONSTRUCTION OF DISPUTED TERM

The parties' dispute whether the term "particular code" is indefinite and whether it should

be construed according to its plain and ordinary meaning.

| Claim Term | Dropbox's Proposed Construction | Motion Offense's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| **"particular code"** '158 Patent: (claim 3); '353 Patent: (claim 5); '737 Patent (claims 3, 29) | Indefinite | Plain and ordinary meaning | Plain and ordinary meaning |

The '158 Patent, titled "Methods, systems, and computer program products for sharing a data object in a data store via a communication," issued on July 3, 2018, and was filed on October 3, 2017. The '158 Patent relates generally to "[m]ethods, apparatuses, and systems . . . for sharing a folder and any contents (e.g., file(s)) thereof, via at least one communication." '730 Patent at Abstract.

Claim 3 of the '158 Patent is an illustrative claim and recites the following limitations (disputed term in italics):

> 3. An apparatus, comprising:
> . . .
>> one or more processors in communication with the at least one non-transitory memory, wherein the one or more processors execute the instructions to:
>> . . .
>>> based on the receipt of the indication of the at least one folder, the indicia associated with the at least one email address, and the indication to share the at least one folder via the at least one network; cause, utilizing *particular code* configured to be stored on a storage at the second node and further configured to cooperate with a file explorer interface, creation of a representation of the at least one folder in a location among one or more folders on the file explorer interface, where the storage at the second node does not store the at least one file when the creation of the representation of the at least one folder is caused;
> . . . .

By contrast, Claim 17 of the '158 Patent is also illustrative and recites the following limitations:

> 17. A system, comprising:
> . . .
>> one or more processors in communication with the at least one non-transitory memory, wherein the one or more processors execute the instructions to:
>> . . .
>>> based on the receipt of the information associated with the at least one data object, the at least one object associated with the at least one email address, and the message associated with the selection of the third user interface element via the at least one network; cause, utilizing code configured to be stored on a storage at the second node and further configured to cooperate with a file explorer interface of a client-based file explorer application, creation of a representation of the at least one data object in a location among one or more folders on the file explorer interface, where the storage at the second node does not store any file in the at least one data object when the creation of the representation of the at least one data object is caused;
>> . . . .

As seen from the illustrative claims above, the patentee uses the terms "particular code" and "code" interchangeably.

### a. The Parties' Positions

The parties dispute whether the claim term "particular code" renders the claims in which it appears indefinite. Dropbox asserts that the use of "particular code" in various independent claims of the '158 Patent, the '353 Patent, and the '737 Patent renders those claims indefinite because other separate independent claims recite "code" (without the "particular" designator) that is configured to have similar features. *See* ECF No. 54 at 3–8. According to Dropbox, "the language of the specifications does not inform a skilled artisan with reasonable certainty about the scope of

the claims" because "[t]he phrase 'particular code' only appears in the summary of the inventions of the patents." *Id.* at 6–7 (citing '158 patent at 2:48–50; '353 patent at 2:54–56; '737 patent at 2:56–58). The language in the summary of the inventions mirrors the language in the '158 patent claim and substantially mirrors the language in the claims of the other two patents, and therefore Dropbox argues provides no further insight into the difference between "particular code" and "code": *See id.*

Motion Offense responds that "Dropbox essentially relies on the doctrine of claim differentiation and asserts that once the term 'particular' is added to 'code,' the meaning of the resulting 'particular code' is impossible to ascertain because it ***must*** be different than 'code' recited in other independent claims." ECF No. 57 at 1 (emphasis in original). According to Motion Offense, this is incorrect. *See id.* Instead, Motion Offense contends that "there is no prohibition on a patentee using different language to refer to similar aspects of its invention." *Id.* Because Dropbox admits that the claims use the terms "code" and "'particular code' in otherwise identical phrases, Motion Offense asserts that the plain reading of the claims does not dictate a different meaning; instead, it demonstrates the similarity and interchangeable use of the two terms.

Dropbox replies that "we are not dealing with two different terms, such as 'code' and 'cipher.'" ECF No. 60 at 1. Rather, Dropbox argues that "we are dealing with a single term ('code') that appears sometimes with a modifier ('particular') and sometimes without." *Id.* Dropbox contends that "particular" must have some meaning and that "Motion Offense is trying to read 'particular' out of the claim language." *Id.* at 1–2.

### b. The Court's Analysis

The Court agrees with Motion Offense and finds that the term "particular code" is not indefinite and should be construed according to its plain and ordinary meaning. Although the use

of different terms may give rise to an inference that different meanings should be assigned, "[t]hat inference, however, is not conclusive; it is not unknown for different words to be used to express similar concepts . . . ." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373–74 (Fed. Cir. 2004) (finding claims not indefinite where different claim terms were found to cover same subject matter); *see also Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (finding claims terms "releasably" and "detachable" have same meaning); *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) ("Different claims with different words can, of course, define different subject matter within the ambit of the invention. On the other hand, claim drafters can also use different terms to define the exact same subject matter. Indeed this court has acknowledged that two claims with different terminology can define the exact same subject matter."); *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1361 (Fed. Cir. 2003) (terms "representing" and "indicative of" given same meaning in claims); *Tandon Corp. v. United States ITC*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant . . . At the same time, practice has long recognized that claims may be multiplied . . . to define the metes and bounds of the invention in a variety of different ways.") (internal quotations and citations omitted). Thus, the Court finds that premise of Dropbox's argument—that the claim terms "code" and "particular code" must have different meanings—is flawed.

Indeed, Dropbox admits that the claims use the terms "code" and "'particular code' in otherwise ***identical*** phrases." ECF No. 54 at 3 (emphasis in original). Thus, the plain reading of the claims does not dictate a different meaning; instead, it demonstrates the similarity and

interchangeable use of the two terms. *See, e.g.*, *Tehrani*, 331 F.3d at 1361; *Bancorp Servs., L.L.C.*, 359 F.3d at 1372–74. Dropbox's reliance on the commonsense inference that different words may have different meanings does not trump the requirement that claims be read as a whole and in view of the intrinsic record, including other claims, when ascertaining their meaning. *See id.*; *Haemonetics Corp. v. Baxter Healthcare Case*, 607 F.3d 776, 782–83 (Fed. Cir. 2010). Nor does it come anywhere close to establishing indefiniteness by clear and convincing evidence. *Sonix Tech. Co., Ltd. v. Publ'ns Intl., Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence."). The intrinsic evidence, the language of the claims themselves—i.e., the otherwise identical phrasing—is evidence that the terms are used interchangeably. Here, Dropbox rigidly, and incorrectly, applies the doctrine of claim differentiation as mandating that the terms "code" and "particular code" found in separate independent claims must have different meanings. ECF No. 54 at 5. But as noted by the Federal Circuit, "[c]laim differentiation is a guide, not a rigid rule," *Marine Polymer Techs., Inc.HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. 2012) (internal citations omitted) and "[i]t is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1329 (Fed. Cir. 2001) (internal citations omitted). As noted above, the concept for using different terms for similar or identical subject matter has long been considered and allowed by the Federal Circuit. Importantly, the Court finds that Dropbox has not met its burden to prove indefiniteness at least because it has not identified any portion of the asserted patents where the term "particular code" is not used interchangeably with the term "code."

In sum, the Court finds that Dropbox has not met its burden to prove indefiniteness. Therefore, no construction is necessary for "particular code," and it will receive its plain and

ordinary meaning.

## IV. CONCLUSION

The Court adopts the constructions listed in the Claim Construction Order concurrent with this memorandum. Furthermore, the Parties should ensure that all testimony that relates to the term addressed in this memorandum is constrained by the Court's reasoning. However, in the presence of the jury the Parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this memorandum that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED** this 24th day of April, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE