**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| MOTION OFFENSE, LLC, | |
| *Plaintiff* | Civil Action No.:  6:20-cv-00251-ADA |
| v. | ██████████████ |
| DROPBOX, INC, | |
| *Defendant* | **PUBLIC VERSION** |

| | |
|---|---|
| MOTION OFFENSE, LLC, | |
| *Plaintiff,* | Civil Action No.:  6:21-cv-758-ADA |
| v. | |
| DROPBOX, INC., | ██████████████ |
| *Defendant.* | |

## DROPBOX, INC.'S RENEWED PRE-VERDICT MOTION FOR JUDGMENT AS A MATTER OF LAW

## **<u>TABLE OF CONTENTS</u>**

I.   Introduction ................................................................................................................. 1

II.   Dropbox Is Entitled To Judgment Of No Infringement. ........................................... 2

   A.   No Reasonable Jury Could Find Direct Infringement By Dropbox. ............................... 2

   B.   No Reasonable Jury Could Find That Motion Offense Met Its Burden To Prove Direct Infringement Of The Folder Share Patents. ................................................................. 5

   C.   No Reasonable Jury Could Find That Motion Offense Met Its Burden To Prove Direct Infringement Of The File Request Patents ..................................................................... 7

III.   Dropbox Is Entitled To Judgment Of No Damages On Motion Offense's Infringement Claims. ...................................................................................................................... 8

IV.   Dropbox Is Entitled To Judgment That The Asserted Claims Are entitled To A Priority Date No Earlier Than October 3, 2017 ...................................................................... 12

V.   Dropbox Is Entitled To Judgment Of Invalidity. .................................................... 15

   A.   No Reasonable Jury Could Find That The Folder Share Patents Are Not Invalid Over Dropbox 2011. ........................................................................................................ 15

   B.   No Reasonable Jury Could Find That The File Request Patents Are Not Invalid Over Dropbox 2011-AirDropper. ...................................................................................... 18

   C.   No Reasonable Jury Could Find That The Asserted Patents Are Not Invalid Over Dropbox 2017. ........................................................................................................ 19

VI.   Conclusion. ............................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alice Corp. v. CLS Bank International*,
573 U.S. 208 (2014)...........................................................................................................15

*Anascape, Ltd. v. Nintendo of America Inc.*,
601 F.3d 1333 (Fed. Cir. 2010).........................................................................................14

*Aristocrat Technologies Australia Pty Ltd. v, International Game Technology*,
709 F.3d at 1362 ............................................................................................................4, 5

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
576 F.3d 1348 (Fed. Cir. 2009).........................................................................................12

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)......................................................................................2, 4

*Elbit Systems Land & C4I Ltd. v. Hughes Network Systems, LLC*,
927 F.3d 1292 (Fed. Cir. 2019).........................................................................................10

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010)...........................................................................................6

*Garretson v. Clark*,
111 U.S. 120 (1884).............................................................................................................10

*IBM Corp. v. Booking Holdings Inc.*,
775 F. App'x 674 (Fed. Cir. 2019) ......................................................................................4

*Lockwood v. American Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997).........................................................................................14

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
566 U.S. 66 (2012)..............................................................................................................15

*Mirror Worlds, LLC v. Apple Inc.*,
692 F.3d 1351 (Fed. Cir. 2012)...........................................................................................6

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008) .........................................................................................13

*Synchronoss Technologies, Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021)...........................................................................................4

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020).........................................................................................11

*VirnetX, Inc. v. Cisco Systems, Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)..............................................................................................9

*Vocalife LLC v. Amazon.com, Inc.*,
    No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ......................11

## I.      INTRODUCTION

Dropbox respectfully moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), because no reasonable jury could find for Motion Offense on any issue.

*First*, no reasonable jury could find that Dropbox infringed any asserted claim of the asserted patents.  Each of the asserted claims require hardware and software that is not provided by Dropbox or steps that are not performed by Dropbox.  Accordingly, no reasonable jury could find that Dropbox infringes any asserted claim.  Moreover, each of the asserted claims require display of certain interfaces using "hypertext markup language-equipped code," yet it is undisputed that none of the accused interfaces in Dropbox's products are displayed using such code, and no reasonable jury could conclude otherwise.

*Second*, no reasonable jury could find that Motion Offense has proven entitlement to any damages in this case.  Motion Offense's damages claim rests on inherently flawed and unreliable inputs and testimony that are insufficient to sustain a damages verdict.  Not only did Motion Offense fail to present any evidence of actual licenses or other transactions involving the four asserted patents, but it presented only speculative evidence that is not tied to the alleged value of the claimed invention.

*Third*, no reasonable jury could conclude that Motion Offense is entitled to a priority date earlier than October 3, 2017, as there is no written description support for any of the asserted claims in earlier-filed applications.  Specifically, the earlier applications to which the asserted patents claim priority do not disclose cloud-based computing where an apparatus that is separate from the user generates and sends emails based on information it receives from the user nodes.

*Fourth*, no reasonable jury could conclude that the asserted claims are not invalid over the prior art.  Dropbox established through extensive testimonial and documentary evidence that the Dropbox 2011, Dropbox 2011-AirDropper, and Dropbox 2017 systems were in public use, on sale,

or otherwise available to the public as of the date of the alleged invention.  Dropbox further conclusively proved that (1) Dropbox 2011 invalidates the asserted claims of the Folder Share patents, (2) Dropbox 2011-AirDropper invalidates the asserted claims of the File Request patents, and (3) Dropbox 2017 invalidates all asserted claims.  Motion Offense provided only conclusory testimony on two claim elements related to two of the four asserted patents that no reasonable jury could credit.

For all these reasons, Dropbox should be granted judgment as a matter of law on all issues.

## II.    DROPBOX IS ENTITLED TO JUDGMENT OF NO INFRINGEMENT.

Motion Offense asserts infringement of U.S. Patent Nos. 10,013,158 (the "'158 patent") (claims 3, 6, and 14) and 11,044,215 (the "'215 patent") (claim 18) (together, the "Folder Share Patents") and U.S. Patent Nos. 10,021,052 (the "'052 patent") (claims 12, 20, 27) and 10,587,548 (the "'548 patent") (claim 46) (together, the "File Request Patents").  Motion Offense failed to provide sufficient evidence that the asserted claims are infringed and no reasonable jury could conclude that Dropbox has directly infringed any asserted claim for the reasons set forth below.

### A.    No Reasonable Jury Could Find Direct Infringement By Dropbox.

*Apparatus Claims.*[1]  No reasonable jury could conclude that Dropbox directly infringes the asserted apparatus and computer readable medium claims.  To prove infringement of those claims, Motion Offense was required to produce evidence that Dropbox makes, uses, offers to sell, or sells an apparatus that "meet[s] *all* of the structural limitations" of the claims.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) (emphasis added).

---

[1] Claims 3, 6, and 14 of the '158 patent, claims 12, 20, and 27 of the '052 patent, and claim 46 of the '548 patent.

However, each of the asserted apparatus claims require hardware (memory and processors) and software (operating systems and/or browsers) that Dropbox does not make, sell, or offer for sale.  *See* PTX-1 ('158 patent) (claims 3, 6, and 14 requiring "at least one non-transitory memory storing instructions" and "one or more processors in communication with the at least one non-transitory memory, wherein the one or more processors execute the instructions"); PTX-2 ('052 patent) (claims 12, 20, and 27 requiring "at least one non-transitory memory storing instructions" and "one or more processors in communication with the at least one non-transitory memory, wherein the one or more processors execute the instructions"); PTX-4 ('548 patent) (claim 46 reciting a "non-transitory computer readable storage medium storing one or more programs, the one or more programs comprising instructions which, when executed by an apparatus").  Each of the asserted claims further require that the claimed hardware and software "execute" instructions that perform various functions, including causing display of a "representation" of or "reference" to a folder or file.  PTX-1 ('158 patent) (claims 3, 6, and 14 requiring the "one or more processors" to "execute the instructions to" "cause, at the second node, display of the representation"); PTX-2 ('052 patent) (claims 12, 20 requiring the "one or more processors" to "execute the instructions to" "cause, at the first node, display of at least one fourth interface with a reference to the at least one file," claim 27 requiring "creation of a representation of the at least one file"); PTX-4 ('548 patent) (claim 46 requiring "the one or more programs comprising instructions which, when executed by an apparatus, cause the apparatus to" cause "creation of a representation of the at least one file").

Motion Offense's expert, Dr. Akl, testified that the "instructions" that cause "display of a representation" of or "reference" to a file or folder are satisfied by the Smart Sync feature contained on the user's desktop.  *See* 5/16/23 Tr. (Akl) 349:7-18 (testifying Smart Sync displays a

"representation"); 5/15/23 Tr. (Akl) 291:16-20; PTX-274 ("Dropbox Smart Sync lets you see and access every file in your account and every folder that's ever been shared with you, ***right from your desktop***[.]") (emphasis added); PTX-298; *see also* 5/16/23 Tr. (Akl) 342-69, 370-77.  As Dr. Akl conceded, "the Smart Sync code is loaded to the user's computer, … [a]nd Smart Sync is executed using the code on the user's computer[.]"  5/16/2023 Tr. (Akl) 493:19-24.  Thus, it is the memory and processors at the user's computer that execute the code that performs those claim limitations—not the Dropbox servers.  *See* 5/17/2023 Tr. (Terk) 766-767 (testifying that "[n]one of [the code that executes Smart Sync] is executed on Dropbox's servers"); 5/17/2023 Tr. (Terk) 831-833; *see also, e.g.*, 5/16/2023 Tr. (Akl) 418-491, 422-23 (testifying that "second node" is satisfied by a "second user").  "Because Dropbox does not provide its customers with any hardware in conjunction with its accused software, Dropbox does not make, sell or offer for sale the complete invention." *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed. Cir. 2021); *see also Cross Med.*, 424 F.3d at 1311-12 (medical device manufacturer not liable for direct infringement of apparatus claim when doctors assembled the infringing apparatus while performing surgery).  As in *Synchronoss*, Dropbox does not directly infringe because there is no dispute that "Dropbox provides its customers with software for download but no corresponding hardware."  *Synchronoss Techs.*, 987 F.3d at 1368.

**Method Claim.**  No reasonable jury could conclude that Dropbox directly infringes asserted method claim 18 of the '215 patent.  To prove infringement of claim 18, Motion Offense was required to produce evidence to show that Dropbox "performs all of the steps of the claimed methods."  *Aristocrat Techs. Austl. Pty Ltd. v, Int'l Game Tech.*, 709 F.3d 1348,  1362 (Fed. Cir. 2013); *see also IBM Corp. v. Booking Holdings Inc.*, 775 F. App'x 674, 677-78 (Fed. Cir. 2019)

4

(holding that direct infringement requires that all steps of a claimed method be performed by or attributable to one entity).

Asserted method claim 18 of the '215 patent recites steps performed by third-party users, such as "causing … display of" various user interfaces, "causing … receipt of" an email, and "causing … receipt of" a web page—all steps that are performed by the third-party end-user.  PTX-6 ('215 patent) (claim 18); 5/16/23 Tr. (Akl) 520:16-23 (testifying Smart Sync "is running on the desktop app on the client's device"); 5/16/23 Tr. (Akl) 519:22-520:6; *see also,* 5/16/23 Tr. (Akl) 346-365; 5/17/2023 Tr. (Terk) 766-767 (testifying that "[n]one of [the code that executes Smart Sync] is executed on Dropbox's servers"); 5/17/2023 Tr. (Terk) 831-833.  For example, claim 18 requires that "based on a detection of an indication that the HTTP link of the at least one email has been selected, causing, at the second node, sending, to at least one server, of a signal for causing creation of a first representation."  PTX-6 ('215 patent) (claim 18).  As Dr. Akl conceded, the representation is created by the user at the user's computer, as is the step of detecting that the link has been selected.  *See* 5/16/23 Tr. (Akl) 349:7-18; *see also* 5/16/23 Tr. (Akl) 520:16-23 (testifying SmartSync "is running on the desktop app on the client's device"); PTX-274.  Because Dropbox does not "perform[] all the steps of the claimed method," Dropbox does not directly infringe claim 18 of the '215 patent.  *Aristocrat*, 709 F.3d at 1362.

**B.    No Reasonable Jury Could Find That Motion Offense Met Its Burden To Prove Direct Infringement Of The Folder Share Patents.**

At trial, Motion Offense asserted that certain folder sharing and Smart Sync features of Dropbox infringe claims 3, 6, and 14 of the '158 patent and claim 18 of the '215 patent.  Claims 3, 6, 14 of the '158 patent each require instructions that cause "display of at least one first interface with a first user interface element, utilizing ***first hypertext markup language-equipped code***" and "display of at least one second interface with a second user interface element, utilizing ***second***

*hypertext markup language-equipped code*." PTX-1 ('158 patent) (claims 3, 6, and 14) (emphases added). Similarly, claim 18 of the '215 patent requires "causing, at a first node, display of: a first user interface element, utilizing *first hypertext markup language-equipped data*," "a second user interface element, utilizing *second hypertext markup language-equipped data*," and "a third user interface element, utilizing the *second hypertext markup language-equipped data*." PTX-6 ('215 patent) (claim 18) (emphases added).

Motion Offense failed to meet its burden to prove that these requirements are met by the accused folder sharing and Smart Sync feature. The evidence conclusively demonstrates that the accused features do not use HTML-equipped code to display the accused "first interface," "first user interface element," "second interface," or "second user interface element," as required by the asserted claims of the '158 patent. 5/17/2023 Tr. (Terk) 769:15-20 ("And in Dropbox, what makes this dialogue box appear? A. Dropbox uses JavaScript to make this dialogue box appear."); *see also id.* at 770-775, 776-781, 833-834; 5/17/2023 Tr. (Gibbons) 900:7-14; 904:5-10; PTX-774.001-004. Similarly, the evidence conclusively demonstrates that the accused features do not use HTML-equipped data to display the accused "first user interface element," "second user interface element," or "third user interface element," as required by asserted claim 18 of the '215 patent. 5/17/2023 Tr. (Terk) 769-15-20; *see also id.* at 770-775, 776-781, 833-834; 5/17/2023 Tr. (Gibbons) 900:7-14; 904:5-10; PTX-774.001-004; DTX-1056, DTX-1057, DTX-1058, DTX-1062, PTX-0088, PTX-774.28, PTX-774.29, PTX-774.30.

Moreover, claim 18 of the '215 patent is a method claim, yet Motion Offense offered no evidence that Dropbox actually practiced the claimed method in the United States. Therefore, judgment of no infringement for claim 18 of the '215 patent is required for this reason as well. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (reversing denial

of JMOL of noninfringement of method claim where patentee failed to demonstrate all claimed steps were performed in the United States); *see also Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012) (affirming no infringement due to "no trial testimony of customers actually using each step of the method claims").

### C.   No Reasonable Jury Could Find That Motion Offense Met Its Burden To Prove Direct Infringement Of The File Request Patents.

At trial, Motion Offense asserted that the Dropbox file request and Smart Sync features infringe claims 12, 20, 27 of the '052 patent and claim 46 of the '548 patent.  Claims 12, 20, and 27 of the '052 patent each require instructions to "cause, at a first node, display of at least one first interface with a first user interface element and a second user interface element, utilizing *first hypertext markup language equipped code*," "cause, at the first node, display of at least one second interface with a third user interface element and a fourth user interface element, utilizing *second hypertext markup language-equipped code*," and "cause, at the second node, display of at least one third interface with a sixth user interface element and a seventh user interface element, utilizing *third hypertext markup language-equipped code*."  PTX-2 ('052 patent) (claims 12, 20, and 27).  Similarly, claim 46 of the '548 patent requires that "the first communication, the second communication, and the third communication each include *hypertext markup language-equipped code* for being displayed via at least one web page."  PTX-4 ('548 patent) (claim 46) (emphasis added).

Motion Offense failed to meet its burden to prove that these requirements are met by the file request feature.  The evidence conclusively demonstrates that the accused features do not use HTML equipped code to display the accused "first interface," "second interface," or "third interface," as required by the asserted claims of the '052 patent. 5/17/2023 Tr. (Terk) 773:15-16; *see also id.* at 773-775, 776-781, 833-834; 5/17/2023 Tr. (Gibbons) 900:7-14, 904:5-10; PTX-

7

774.001-004. Similarly, the evidence conclusively demonstrates that the accused features do not use HTML-equipped code to display the accused "first communication," "second communication," or "third communication," as required by asserted claim 46 of the '548 patent. 5/17/2023 Tr. (Terk) 773:15-16 ("Is this dialogue box shown by using HTML? A. No. It is not."); *see also id.* at 773-775, 776-781, 833-834; 5/17/2023 Tr. (Gibbons) 900:7-14, 904:5-10; PTX-774.001-004.

## III.    DROPBOX IS ENTITLED TO JUDGMENT OF NO DAMAGES ON MOTION OFFENSE'S INFRINGEMENT CLAIMS.

Dropbox is entitled to judgment as a matter of law of no damages because no reasonable jury could find damages of any amount in light of the evidence presented at trial.

*First*, Motion Offense failed to present any market evidence to support its damages claim. In particular, Motion Offense did not present any evidence of actual licenses or other transactions involving the four asserted patents.  5/16/2023 Tr. (Dell) 600:9-17.  Moreover, Mr. Dell's conclusion that the parties to the hypothetical negotiation would have agreed to a royalty rate of $0.10/subscriber-month is wholly inconsistent with the evidence.  As an initial matter, none of the licenses and financial transactions in the record support a running royalty damages calculation, let alone a running royalty amounting to $0.10/subscriber-month.  5/16/2023 Tr. (Dell) 655:8-18, 657:5-22, 658:1-14, 658:21-24, 659:8-14; 694:8-20; 5/15/2023 Tr. 240:5-9; PTX-7C; PTX-7D; PTX-7F; PTX-7G; PTX-138; DTX-320; DTX-324.  Indeed, Mr. Dell conceded that there have been no licenses executed covering the asserted patents and all the transactions involving those patents (or related applications) are a miniscule fraction of the amount Mr. Dell offers as a reasonable royalty in this case.  5/16/2023 Tr. (Dell) 662:12-16; 5/15/2023 Tr. (Gordon) 240:5-9.

*Second*, Mr. Dell's damages opinion is speculative and insufficient to support a damages award.  Mr. Dell's opinion rests on the unsupported assumption that the parties to the hypothetical

negotiation would have agreed to a royalty rate of $0.10/subscriber-month.  5/16/2023 Tr. (Dell) 553:23-554:3, 554:18-22.  Mr. Dell arrives at this conclusion using quantitative inputs he selected from Dropbox consumer surveys that contain no information relating specifically to accused subscription plans or the accused features.  5/16/2023 Tr. (Dell) 607:20-609:6, 611:9-615:6, 617:17-618:18, 618:23-619:24, 620:2-622:11, 623:7-20, 626:20-627:22, 638:9-640:1; 668:2-678:14; 688:22-691:20, 693:11-13; PTX-112; PTX-115; PTX-739; PTX-1100; , *see also* 5/16/2023 Tr. (Dell) 590:14-593:22 (generically pointing to Dropbox 10Ks and plan to convert Dropbox customers to paid plans without any reference to the accused functionality); PTX-103; PTX-810; PTX-0850; PTX-1228.  Indeed, it is undisputed that the surveys underlying Mr. Dell's damages opinions include ***unaccused features*** (including prior art features), ***unaccused plans***, and responses from ***non-Dropbox users***.  5/16/2023 Tr. (Dell) 666:18-667:24; 688:22-691:20, PTX-220.  Despite that the surveys provide no way to distinguish between unaccused features and plans and the specific accused features at issue here, Mr. Dell relies on data from the surveys at almost every step of his calculations.  5/16/2023 Tr. (Dell) 607:20-609:6, 611:9-615:6, 688:22-691:20.  As just one example, the foundation for Mr. Dell's damages opinion is a 2014 survey that was conducted ***years*** before the accused Smart Sync feature was ever released to the market.  PTX-112; 5/16/2023 Tr. (Dell) 607:20-609:6, 611:9-615:6.  Moreover, the monetary values derived from that survey generically value "folder sharing" even though both Mr. Dell and Dr. Akl conceded that those features are ***not accused of infringement***.  *See* 5/16/2023 Tr. (Akl) 492:18-20 (testifying "folder share alone . . . would not infringe" the asserted patents); 5/16/2023 Tr. (Dell) 607:20-609:6, 611:9-615:6.  As a result, Mr. Dell's damages calculations include value attributable to unaccused features, and therefore fail to comply with the apportionment requirement.  *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (patentee seeking a royalty

for only some features of a multi-feature product "must take care to seek only those damages attributable to the infringing *features*." (emphasis added)).

**Third**, Mr. Dell's damages opinion is insufficient to support a damages award because he fail to account for the distinctions between the asserted patents and accused features. Mr. Dell opines that the appropriate royalty rate for all four asserted patents is the same as the appropriate royalty rate for any one or more of the four asserted patents. 5/16/2023 Tr. (Dell) 573:1-19 (opining that only the royalty base would be impacted if the earliest asserted patent was found to not be infringed); 580:5-581:6 (opining that the hypothetical negotiation would cover the patent family); *see also* Dkt. 359 (Dropbox's offer of proof regarding cross-examination of Mr. Dell). Mr. Dell offers that opinion despite that the different features are alleged to infringe the Folder Share Patents and the File Request Patents. 5/15/2023 Tr. (Akl) 280:18-281:3 (testifying there is no plan that includes "just the accused features and nothing else . . . the plans include multiple features, including what's accused"); 5/16/2023 Tr. (Akl) 493:25-494:6, 494:25-495:6; *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) (patentee "must in every case … apportion … the patentee's damages between the patented *feature[s]* and the unpatented *features*" (emphases added)); *Elbit Sys. Land & C4I Ltd. V. Hughes Network Sys., LLC*, 927 F.3d 1292, 1301 (Fed. Cir. 2019) ("The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing *features* of the product, and no more." (emphasis added)).

**Fourth**, Mr. Dell's conclusion that Dropbox would agree to pay a portion of its gross profits is speculative and not tied to the facts of this case. Mr. Dell's reliance on gross profits omitted key costs that would have factored into the hypothetical negotiation and Mr. Dell offered no explanation for why Dropbox would have agreed to a royalty tied to its gross profits. 5/16/2023 Tr. (Dell) 622:17-623:2, 678:15-25, 681:12-682:3, 682:11-15, 684:6-19. Similarly, Mr. Dell's

starting point relies on a survey that computes values that are more than three times the amount that Dropbox actually charges its customers for plans allegedly including the accused features. PTX-112; 5/16/2023 Tr. (Dell) 607:20-609:6, 611:9-615:6 .

*Fifth*, Mr. Dell failed to tie his damages calculations to the allegedly infringing activity. Mr. Dell calculated damages based on Dropbox ***customers'*** allegedly infringing use of Dropbox products, and Dropbox's alleged indirect infringement, when Motion Offense asserts only ***direct infringement*** by Dropbox.  5/16/2023 Tr. (Akl) 502:23-503:3, 503:13-17, 526:20-24; 5/16/2023 Tr. (Dell) 558:16-25, 561:13-21, 564:10-15 ("[T]he way in which Dropbox provides – or makes use of the invention is that by selling subscription to its services for which customers are able to access that system that Dropbox manages."), 565:16-21 ("My understanding is that they sell the subscriptions, and then those users are able to access the system that's managed by Dropbox."), 587:25-588:11 (discussing technical benefits enjoyed by Dropbox's customers); *see supra* 8-9 (relying on Dropbox consumer survey data), 688:17-20 ("Q. Now, you claim that you analyzed Dropbox subscribers' extent of use of the accused features and functionality to apportion the royalty rate?  A. Yes.  One of the things I looked at.  Yes.").  Damages should therefore be tied to any purported direct infringement by Dropbox (although as discussed above, there is none), not use of the allegedly infringing features by Dropbox's customers.  *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) ("Sales of Acrobat . . . cannot be a measure of damages for direct infringement by Adobe—sales could serve here as a measure of damages only for TecSec's indirect infringement theory, which relies on infringement by Adobe customers."); *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950, at *3 (E.D. Tex. Sept. 30, 2020) ("Given that the Court has granted partial summary judgment of no pre-suit induced infringement, any surviving damages from the period prior to the filing of the complaint must have

11

resulted from direct infringement.  Without being able to delineate which of Mr. Ratliff's pre-suit damages opinions apply to direct infringement as opposed to indirect infringement . . . the Court must exclude Mr. Ratliff's pre-suit damages opinions.").  Similarly, Motion Offense offered ***no evidence*** that any customer ever even used the allegedly infringing feature (let alone in any given month), such that Mr. Dell's damages calculation of $0.10 per subscribe month rate is wholly divorced from any alleged infringement.  *See, e.g.*, PTX-1 ('158 patent) (claims 3, 6, and 14 requiring the "one or more processors" to "execute the instructions"); PTX-2 ('052 patent) (same with respect to claims 12, 20, 27); PTX-4 ('548 patent) (claim 46 requiring "one or more programs comprising instructions which, when executed by an apparatus, cause the apparatus to" perform certain functions).  Moreover, claim 18 of the '215 patent is a method claim.  But Motion Offense failed to offer evidence of actual infringing use with respect to that claim, and thus there is insufficient evidence to support damages for infringement of that claim.  *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358 (Fed. Cir. 2009) (holding damages directed to a method claim are limited "to devices that actually practice the method").

***Finally***, Motion Offense's damages claim is legally deficient because, as set forth in Dropbox's motions to exclude Mr. Dell's opinions (Dkt. 195, Dkt. 271; Dkt. 342; Dkt. 343), Mr. Dell should not have been permitted to testify.  Dropbox hereby incorporates the arguments and evidence presented in support of those motions.

## IV.   DROPBOX IS ENTITLED TO JUDGMENT THAT THE ASSERTED CLAIMS ARE ENTITLED TO A PRIORITY DATE NO EARLIER THAN OCTOBER 3, 2017.

Motion Offense failed to provide sufficient evidence—or indeed ***any*** evidence—that the asserted claims are entitled to a priority date earlier than October 3, 2017.  Motion Offense asserted at trial that the asserted patents were entitled to claim priority to two applications: No. 13/624,906 (the "'906 application"), filed on September 22, 2012, and No. 13/626,635 (the "'635

application"), filed on September 25, 2012 (the '906 and '635 applications together, the "2012 Applications"). PTX-1332; PTX-1333; 5/15/2023 Tr. (Morris) 193:21-194:5; *id* at 106:1-7; *id.* at 119:18-120:8. However, the asserted patents are ***continuations-in-part*** of the 2012 Applications, and there is no dispute that they contain additional subject matter not contained in the 2012 Applications. 5/15/2023 Tr. (Morris) 172:10-13, 173:13-23 (Morris admitting that the application he filed in 2017 "was not identical to the applications filed in 2012"); 5/18/2023 Tr. (Shamos) 1092:13-17; *id.* at 1078-1106; 11:12-22; 1084:18-22. *See also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008) ("Generally, a CIP adds new matter on which at least one claim relies for support."); MPEP § 201.08 ("A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and ***adding matter not disclosed in the earlier nonprovisional application***." (emphasis added)); 5/17/2023 Tr. (Zilka).

Specifically, while the 2012 Applications were directed to requesting and/or sharing content between two user computers across a network via email such that the content is shared without being attached to the email (*see, e.g.*, PTX-1333 ¶¶ 0005, 0029, 0065, 0074, 0086, 0122, 0142; PTX-1332 ¶¶ 0003, 0087, 0103, 0115), the asserted patents claim and describe an apparatus that is separate from either user node that generates and sends emails based on information it receives from the user nodes (*see, e.g.*, PTX-1 ('158 patent) (claims 3, 6, and 14); PTX-2 ('052 patent) (claims 12, 20, and 27); PTX-4 ('548 patent) (claim 46); PTX-6 ('215 patent) (claim 18)). *See* 5/18/2023 (Shamos) 1102:5-9 ("So just in a nutshell, what is it that's not disclosed in the 2012 Morris applications that will be focused on here? A. Right. Well, one thing is there's no third node that generates an e-mail."); 1089:22-25 (similar); PTX-1332, PTX-1333.

"To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Motion Offense failed to meet its burden to prove that the asserted claims are entitled to a priority date earlier than October 3, 2017. The evidence conclusively demonstrates that the asserted claims are not supported by the written description of the 2012 Applications. 5/18/2023 (Shamos) 1081:23-25; 5/18/2023 Tr. (Shamos) 1106:10-12. The 2012 Applications did not disclose cloud-based computing wherein an apparatus that is separate from either user node generates and sends emails based on information it receives from the user nodes. *See, e.g.*, PTX-1333 ¶¶ 0005, 0029, 0065, 0074, 0086, 0122, 0142; PTX-1332 ¶¶ 0003, 0087, 0103, 0115. Instead, the 2012 Applications disclose only user-to-user computing, wherein one user or the first node generates an email, and it goes through a mail relay node, or path node, rather than through an apparatus, to get to the second node. *See, e.g.*, PTX-1333 ¶¶ 0005, 0029, 0065, 0074, 0086, 0122, 0142; PTX-1332 ¶¶ 0003, 0087, 0103, 0115. Indeed, Motion Offense's technical expert, Dr. Akl, made no effort to establish that the asserted claims are supported by the 2012 Applications during Motion Offense's case-in-chief, and even in rebuttal, only pointed to a single paragraph without any explanation for how that paragraph purportedly supports the full scope of the asserted claims. 5/18/2023 Tr. (Akl) 1186:16-1192:11; PTX-1333 ¶ 0048.

Because Motion Offense failed to present any evidence from which a reasonable jury could conclude that the asserted claims are supported by the written description of the 2012

Applications, the asserted claims are entitled to a priority date of no earlier than October 3, 2017.

*See* 5/18/2023 (Shamos) 1106:10-12.

## V.     DROPBOX IS ENTITLED TO JUDGMENT OF INVALIDITY.

As the Federal Circuit has explained, where a system was "'known or used by others' in this country before the date of invention or if it was 'in public use' in this country more than one year before the date of application, it qualifies as prior art." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) (quoting pre-AIA 35 U.S.C. § 102(a), 102(b)); *see also New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002) ("The statutory phrase 'public use' does not necessarily mean open and visible in the ordinary sense; it includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor.").  The evidence presented at trial conclusively established that that invalidating prior art systems render each of the asserted claims invalid.  *See, e.g.*, 5/17/2023 Tr. (Shamos) 981:22-982:14, 988:16-989:14 (establishing that Dropbox 2011 was a single system because it included each of the claimed features, as confirmed by source code for Dropbox 2011 from September 14, 2011 and September 21, 2011).

### A.     No Reasonable Jury Could Find That The Folder Share Patents Are Not Invalid Over Dropbox 2011.

Dropbox conclusively established that Dropbox 2011 was available to the public as of September 25, 2012—the alleged priority date of the asserted patents—and at least one year prior and is thus prior art to the Folder Share Patents.  Motion Offense's own witnesses conceded that Dropbox was available to the public at least as early as 2012.  *See, e.g.*, 5/15/2023 Tr. (Morris) 168:16-19 ("So Dropbox was a cloud-based storage system for sharing files and folder that already existed when you filed this application in 2012? A. That was my understanding. Correct."), 118:17-119:5, 191:3-9; 5/15/2023 Tr. (Gordon) 220:11-18 ("Q. So you, like Mr. Morris, have been

a Dropbox user since 2012 time frame. Is that about right? A. That sounds about right."); 5/17/2023 Tr. (Zilka) 968:19-969:1, 970:2-3; 5/17/2023 Tr. (Caldwell) 971:14-18.

Multiple Dropbox and third party fact witnesses also testified to Dropbox's public availability, and use, and sale prior to 2012, including before those witnesses had any affiliation with Dropbox. *See, e.g.*, 5/17/2023 Tr. (Terk) 755:2-5; 749:20-21; 760:4-6; 5/17/2023 Tr. (Belanger) 841:17-21; 846:14-847:18; 848:15-16; 857:6-858:1; 861:18-862:4; 5/15/2023 Tr. (Shu) 255:20-256:16; 5/15/2023 Tr. (Holstein) 265:9-19; 5/17/2023 Tr. (Pandurangan) 964:25-965:11; 967:10-24.   The public use, sale, and availability of Dropbox was also corroborated by contemporaneous evidence.   *See, e.g.*, DTX-0036, DTX-0042, DTX-0043, DTX-0086, DTX-0113, DTX-0115, DTX-0116, DTX-0733, DTX-1088, DTX-0348, DTX-0349, DTX-0851. Dropbox's expert, Professor Shamos similarly testified to the public availability of Dropbox 2011. *See, e.g.*, 5/17/2023 Tr. (Shamos) 993:3-10, 993:14-994:2; 5/18/2023 Tr. (Shamos) 1135:25-1136:10, 1138:10-21, 1139:12-24.

Professor Shamos also explained that Dropbox 2011 taught each and every limitation of the asserted claims of the Folder Share Patents and that those features were publicly available before 2012.  *See generally* 5/17/2023 Tr. (Shamos) 989:15-996:3 (giving an overview of the invalidity case including a discussion of how Dropbox's patents describe Dropbox 2011); *id.* at 988-1022; 1025-1036; 1015:10-15; 1021:15-17; 1026:23-25; 1036:7-8; 994:6-16 ("Q. Did the Dropbox patent applications you reviewed show a user requesting files? A. Yes. So this is from the '929 application, which was filed in August 2012…."); 5/18/2023 Tr. (Shamos) 1134:24-1135:24; *see also* 5/17/2023 Tr. (Terk) 766:2-10 ("A. Well, our mobile applications have always had to operate on devices with less space than our users had available on their computers. And so they always had the ability to show you files and folders inside of your Dropbox account but

delay downloading the contents of those files until absolutely necessary. Q. And when was that technology first used by Dropbox customers? A. 2010, I believe."); 5/17/2023 Tr. (Belanger) 859:1-8; DTX-0036, DTX-0042, DTX-0043, DTX-0086, DTX-0113, DTX-0115, DTX-0116, DTX-0733, DTX-1088, DTX-0348, DTX-0349, DTX-0851.

Motion Offense's expert Dr. Akl offered no opinion that any element of any asserted claim of the '158 patent was not disclosed by Dropbox 2011. The only limitation of the Folder Share patents that Dr. Akl disputed was disclosed in Dropbox 2011 was the step of causing "creation of a second representation of the at least one folder … that is displayable via the ***file explorer interface*** of the ***client-based file explorer application***," as required by asserted claim 18 of the '215 patent. PTX-6 ('215 patent) (claim 1); 5/18/2023 Tr. (Akl) 1238:14-1239:4. But Dr. Shamos explained that "a file explorer interface" is "an interface that allows you to explore files," and he identified it in the Dropbox 2011 mobile application in DTX-0116. 5/17/23 Tr. (Shamos) 1010:18-22. Moreover, Professor Shamos explained that while a computer's "native operating system" provides a file explorer interface, "[t]here are many application programs that have their own file explorer interface as Dropbox did," as confirmed by corroborating evidence such as DTX-0116. 5/17/23 Tr. (Shamos) 1017:12-1018:1; *see also* 5/17/2023 Tr. (Shamos) 1025:21-1026:9; 1032:5-14; 5/18/2023 Tr. (Shamos) 1164:15-1167:6 (stating that 2011 Dropbox mobile app meets both the "file explorer interface" and the "client-based file explorer application" elements of the '215 patent claim 1); 5/18/2013 Tr. (Akl) 1251:3-1253:24 (conceding that mobile phones are among the exemplary devices disclosed in the 2012 applications). Accordingly, no reasonable jury could find that the asserted Folder Share patent claims were patentable over Dropbox 2011.

**B.      No Reasonable Jury Could Find That The File Request Patents Are Not Invalid Over Dropbox 2011-AirDropper.**

Dropbox conclusively established that the Dropbox 2011-AirDropper system was available to the public as of September 25, 2012—the alleged priority date of the asserted patents—and at least one year prior and is thus prior art to the File Request Patents. *See* 5/17/2023 Tr. (Terk) 764:4-16 ("Q. What do we see on this slide? A. These are four examples of the sorts of tools we were just talking about. Q. And these were available in 2010? A. Yes. . . . Q. And if we look at the first one here, AirDropper, what was that? A. AirDropper was a tool to request files from other people and have the files that they sent to you stored in your Dropbox account."); *see also* 5/17/2023 Tr. (Terk) 764:17-765:2; 5/17/2023 Tr. (Belanger) 875:2-14; 5/18/2023 Tr. (Shamos) 1135:25-1136:10, 1046:25-1079:19; 5/17/2023 Tr. (Shamos) 1036-1068; *supra* § V.A (describing public availability of Dropbox 2011).  The public availability of Dropbox 2011-AirDropper was further confirmed through contemporaneous evidence. *See, e.g.*, DTX-742, DTX-797, DTX-799, DTX-800; DTX-0105.

Professor Shamos explained that Dropbox 2011-Airdropper taught and/or rendered obvious by each and every limitation of the asserted claims of the File Request Patents and that those features were publicly available before 2012. *Supra* § V.A (describing Dropbox 2011); 5/18/2023 Tr. (Shamos) 1066:14-22; 1068:4-1069:4; 1069-1072; 1071:25-1072:5; 1072:6-1078:10; 1078:4-7; *see also id.* 1046:25-1079:19; 5/17/2023 Tr. (Shamos) 1037:18-1040:8.  His testimony was corroborated by contemporaneous evidence. *See, e.g.*, DTX-0742, DTX-0797, DTX-0799, DTX-0800.

Dr. Akl offered no opinion that any element of any asserted claim of the '548 patent was not disclosed by Dropbox 2011-AirDropper.  The only limitation of the File Request patents that Dr. Akl disputed was the "date or the time" element, which appears ***only*** in the '052 patent.

Asserted claims 12, 20, and 27 of the '052 patent each require  "an indication of at least one of a date or a time."  PTX-2 ('052 patent) (claims 12, 20, 27).  Motion Offense attempted to establish that the AirDropper source code did not show  a "deadline," but instead showed "an expiration of the files that had been made available."  5/18/23 Tr. (Shamos) 1174:16-25.  However, Professor Shamos testified that ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████    5/18/2023 Tr. (Shamos) 1052:15-19.  *See also* 5/18/2023 Tr. (Shamos) 1066:12-1067:24; 5/18/2023 Tr. (Shamos) 1049:24-1053:23; 5/18/23 Tr. 1057:13-15; 1068:22-1069:4.  Accordingly, no reasonable jury could find that the asserted File Request patent were patentable over Dropbox 2011-Airdropper.

      **C.**      **No Reasonable Jury Could Find That The Asserted Patents Are Not Invalid Over Dropbox 2017.**

      There is no dispute that Dropbox as it existed prior to October 3, 2017 anticipates the asserted claims.  Dropbox conclusively established that Dropbox 2017 was in public use, on sale, or otherwise publicly available as of October 3, 2017 and is thus prior art to all asserted claims to the extent Motion Offense is not entitled to a priority date earlier than October 3, 2017.  *See supra* § V.A.  5/17/2023 Tr. (Terk) 765:17-19; 5/18/2023 Tr. (Shamos) 1108:4-6 ("And was Dropbox 2017 in public use before October of 2017? A. Yes.  Dropbox has hundreds of millions of users. I'm sure most of them are members of the public"); 5/17/2023 Tr. (Belanger) 860:3-9, 861:18-862:4; 5/18/2023 Tr. (Shamos) 1108:4-8, 1135:25-1136:10; 5/15/2023 Tr. (Akl) 299:20-23, 305:11-20.  The public availability of Dropbox 2017 was corroborated by contemporaneous evidence, and was unchallenged by Motion Offense.  *See, e.g.*, PTX-0171.

Dr. Shamos, further provided unrebutted opinions, supported by contemporaneous documentation demonstrating that there is no material difference between the accused versions of Dropbox and Dropbox 2017.  *See generally* 5/18/2023 Tr. (Shamos) 1108-117; 1116:22-1117:2; 1117:4-1121:15; 1195:10-1916:6; 1106:10-12; 1106-1108; 1121:17-1127; 1128-1130; 1129:24-1130:1; 1130-1133; 1133-1135; 1136-1137.   His testimony was corroborated by contemporaneous evidence.  *See* DTX-0877, DTX-0878, DTX-0879, DTX-0880, DTX-0881, DTX-0882, DTX-0883, DTX-0884, DTX-0885, DTX-0886, DTX-0888, DTX-0889, DTX-0890, DTX-0891, DTX-0893, DTX-0894, DTX-0907, DTX-0909, DTX-0911, DTX-0912, DTX-0913, DTX-0914, DTX-0915, DTX-0916, DTX-0917, DTX-0918, PTX-0222, PTX-0243, PTX-0248, PTX-0257, PTX-0260, PTX-0261, PTX-0262, PTX-0267, PTX-0274, PTX-0283, PTX-0284, PTX-0285, PTX-0286, PTX-0291, PTX-0295, PTX-0298, PTX-0299, PTX-0316A, PTX-0316AA, PTX-0316B, PTX-0316BB, PTX-0316C, PTX-0316D, PTX-0316E, PTX-0316F, PTX-0316G, PTX-0316H, PTX-0316I, PTX-0316J, PTX-0316K, PTX-0316L, PTX-0316M, PTX-0316N, PTX-0316O, PTX-0316P, PTX-0316Q, PTX-0316R, PTX-0316S, PTX-0316T, PTX-0316U, PTX-0316V, PTX-0316W, PTX-0316X, PTX-0316Y, PTX-0316Z.  Motion Offense's expert, Dr. Akl, offered no contrary opinions.  *See* 5/18/2023 Tr. (Akl) 1237-1255.  Because no reasonable jury could conclude that the asserted patents are entitled to a priority date earlier than October 3, 2017 (*see supra*), Dropbox is entitled to judgment that Dropbox 2017 invalidates the asserted claims.

## VI.    CONCLUSION.

For the foregoing reasons, Dropbox respectfully requests that the Court enter judgment as a matter of law on all disputed issues in favor of Dropbox under Federal Rule of Civil Procedure 50(a).

May 19, 2023                          Respectfully submitted,

                                      */s/ Gregory H. Lantier*
                                      Kelly Ransom
                                      Texas State Bar No. 24109427
                                      **KELLY HART & HALLMAN LLP**
                                      303 Colorado, Suite 2000
                                      Austin, Texas 78701
                                      Tel: (512) 495-6464
                                      Kelly.ransom@kellyhart.com

                                      Gregory H. Lantier
                                      Amanda L. Major (*pro hac vice*)
                                      **WILMER CUTLER PICKERING HALE &
                                      DORR LLP**
                                      2100 Pennsylvania Avenue
                                      Washington DC 20037
                                      Tel: (202) 663-6327
                                      Tel: (202) 663-6304
                                      gregory.lantier@wilmerhale.com
                                      amanda.major@wilmerhale.com

                                      Liv Herriot
                                      **WILMER CUTLER PICKERING HALE &
                                      DORR LLP**
                                      2600 El Camino Real, Suite 400
                                      Palo Alto, California 94306
                                      Tel: (650) 858-6138
                                      liv.herriot@wilmerhale.com

                                      Makenzi G. Herbst (*pro hac vice*)
                                      Rauvin A. Johl (*pro hac vice*)
                                      Jeannette Leopold (*pro hac vice*)
                                      **WILMER CUTLER PICKERING HALE &
                                      DORR LLP**
                                      60 State Street
                                      Boston, MA 02109
                                      Tel: (617) 526-6171
                                      Tel: (617) 526-6104
                                      Tel: (617) 526-6109
                                      makenzi.herbst@wilmerhale.com
                                      rauvin.johl@wilmerhale.com
                                      jeannette.leopold@wilmerhale.com

                                      ***Attorneys for Dropbox, Inc.***

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record are being served with a copy of the foregoing document via electronic mail on May 19, 2023.

<u>*/s/ Kelly Ransom*        </u>
Kelly Ransom

22